MURIEL H. NYE AND CHARLES A. NYE, APPELLANTS, V.
FIRE GROUP PARTNERSHIP, A NEBRASKA
GENERAL PARTNERSHIP, APPELLEE.

657 N.W.2d 220

Filed March 7, 2003. No. S-02-543.

Charles A. Nye, pro se, and for appellant Muriel H. Nye.

Ann M. Grottveit and Robert J. Becker, of Stalnaker, Becker, Buresh, Gleason & Farnham, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Muriel H. Nye and Charles A. Nye appeal from a district court order sustaining the motion for summary judgment filed by the appellee, Fire Group Partnership (Fire Group), on an adverse possession claim. The Nyes presented evidence showing that they mowed a tract of land and erected a snow fence on

the land for more than 10 years. The snow fence was removed seasonally, but the posts were permanently installed. The district court concluded that the Nyes did not adversely possess the property as a matter of law. We determine that there are issues of material fact whether the Nyes' use of the property was open and notorious, whether they exclusively and continuously possessed the property, and whether they possessed the property with permission. Accordingly, we reverse, and remand for further proceedings.

## BACKGROUND

On June 9, 2000, the Nyes filed an amended petition seeking to quiet title in a tract of land referred to as "tract 2." Tract 2 is a 24-foot wide strip of land between the Nyes' home and a cornfield to the west of their home. The Nyes alleged that they owned the land because they adversely possessed it for over 10 years. Fire Group filed a motion for summary judgment.

The Nyes presented evidence that when they purchased their property in 1972, they believed that it ended at the edge of an adjacent cornfield and that tract 2 belonged to them. Between 20 and 30 years ago, they planted grass on tract 2. They also mowed the grass on tract 2 for the past 28 years and used part of the tract for collecting and burning dead limbs and grass for more than 10 years. In addition, they used part of it to erect a snow fence that used permanent stakes which were put in place about 20 years ago. The fence was taken down each year in the springtime, but the stakes remained. The record contains a photograph of the fence and of the stakes without the fence attached and shows that the fence was in place on November 7, 1990. The fence was installed near the crop line, and the stakes are about 5 feet high. The Nyes testified that they never saw farm equipment parked or driven on the property. They also testified that they were never asked to remove the snow fence.

Fire Group provided the affidavit of Mickey Gottsch, who farmed the land to the west of the Nyes' property under a lease from Gottsch Enterprises and a sharecrop agreement before it was sold to Fire Group. Although Gottsch testified that he farmed the land for 12 to 15 years, the record contains a deed showing that Gottsch Enterprises purchased the property in

April 1994. Gottsch averred that he deliberately left the grass in place to create a buffer zone between the crops and the Nyes' property so that herbicides would not drift onto the Nyes' property. At a deposition, Gottsch stated that the grass was already on tract 2 when he first began farming there. He stated that he had previously mowed a section of tract 2 both near the road and also up to the snow fence. He testified that once or twice a year, he used the area to park and store farm equipment such as tractors and combines and that the equipment would not make an imprint on the grass. But Gottsch also stated that he parked the equipment to the west of the fenceposts because it would upset the Nyes to park the equipment on the east side of the posts. He stated that he also used tract 2 for turning around his equipment when cultivating.

According to Gottsch, there was one time when the snow fence was still up when it was time to plant crops and the Nyes removed the fence at the request of Gottsch's father. Gottsch, however, at his deposition, stated that the fence was placed in the field and that after the Nyes were contacted, they moved the fence onto tract 2. Without providing details, Gottsch stated that the mowing and erection of the snow fence were done with permission and that these activities never interfered with his use of the land.

The court sustained Fire Group's motion for summary judgment and overruled a motion for summary judgment filed by the Nyes. The court concluded that the seasonal activities of mowing and placing a snow fence could not support a finding that the Nyes were in continuous, exclusive, and notorious possession of tract 2. The court further found that the Nyes used the tract with the permission of the record owners and did not interfere with the farming activities in a manner sufficient to put the record owners on notice of a claim of hostile possession. The Nyes appeal.

## ASSIGNMENT OF ERROR
The Nyes assign, rephrased, that the district court erred by granting Fire Group's motion for summary judgment.

## STANDARD OF REVIEW
Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine

issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Herrera v. Fleming Cos., ante* p. 118, 655 N.W.2d 378 (2003). If a genuine issue of fact exists, summary judgment may not properly be entered. *McCarson v. McCarson*, 263 Neb. 534, 641 N.W.2d 62 (2002).

## ANALYSIS

The Nyes contend that the trial court improperly applied cases involving the seasonal use of property for grazing livestock and hunting to determine that they were not in continuous, exclusive, and notorious possession of tract 2. They further argue there is no evidence that they used tract 2 with permission.

■ A party claiming title through adverse possession must prove by a preponderance of the evidence that the adverse possessor has been in (1) actual, (2) continuous, (3) exclusive, (4) notorious, and (5) adverse possession under a claim of ownership for the statutory period of 10 years. *Wanha v. Long*, 255 Neb. 849, 587 N.W.2d 531 (1998). The court sustained Fire Group's motion for summary judgment because it determined that the Nyes did not continuously, notoriously, or exclusively use the property, and it determined that they used the property with permission. Accordingly, we do not discuss the elements of actual and adverse possession under a claim of ownership.

## NOTORIOUS

■ The court concluded that the Nyes' possession was not notorious. The acts of dominion over land allegedly adversely possessed must, to be effective against the true owner, be so open, notorious, and hostile as to put an ordinarily prudent person on notice of the fact that the lands are in adverse possession of another. *Id.* If an occupier's physical actions on the land constitute visible and conspicuous evidence of possession and use of the land, that will generally be sufficient to establish that possession was notorious. *Id.* Although the enclosure of land renders the possession of land open and notorious, and tends to show that it is exclusive, it is not the only way by which possession may be rendered open and notorious; nonenclosing improvements to land, such as erecting buildings or planting

groves or trees, which show an intention to appropriate the land to some useful purpose, are sufficient. *Id.*

Here the Nyes' use of the land was apparent. They planted grass, mowed and maintained the property, erected a snow fence in the winter, and left the 5- to 6-foot-high fenceposts permanently in place. The record contains evidence that others were aware of the Nyes' use of the property. The court concluded that the Nyes did not interfere with farming activities in a manner sufficient to show hostile possession. But the test does not require a direct interference with activities. Instead, it asks whether there was visible and conspicuous evidence of possession and use of the land. Regardless, the Nyes' act of planting grass on the property necessarily meant that it was not being used for farming. The Nyes do not appeal the denial of their motion for summary judgment, and we do not decide as a matter of law that the Nyes' use of the property was open and notorious. Instead, we conclude that there is an issue of material fact whether the Nyes' use of the property was open and notorious.

### CONTINUOUS

Applying *Hardt v. Eskam*, 218 Neb. 81, 352 N.W.2d 583 (1984), a case concerning the use of land for hunting, the court concluded that the Nyes were not in continuous possession of the property because the use of a snow fence and mowing were seasonal. The Nyes contend that the acts of planting the grass, mowing, burning branches, and erecting a snow fence show a continuous use of the property.

 Title cannot be acquired without the simultaneous and continuous existence of each element of adverse possession for the required 10-year period. See *Wanha v. Long, supra.* The term "continuous" means " 'uninterrupted . . . stretching on without break or interruption.' Webster's Third New International Dictionary, Unabridged 493-94 (1968)." *Hardt v. Eskam*, 218 Neb. at 82, 352 N.W.2d at 585. The law does not require the possession to be evidenced by persons remaining continuously upon the land and constantly from day to day performing acts of ownership. *Hardt v. Eskam, supra.* It is sufficient if the land is used continuously for the purposes to which it may be naturally adapted. *Id.*

In *Hardt*, the plaintiff hunted on a tract of land and eventually leased hunting rights to others, who built duck blinds on the property. He also grazed cattle in intermittent years on the property and had no records to show which years cattle were present on the property. We determined that the property was suitable for hunting, fishing, and livestock pasture year round. We then determined that because hunting was seasonal, the recreational use of the property was, at best, occasional and limited to a few weeks or months each year. As a result, the plaintiff's actions were not continuous and could not support a claim for adverse possession.

Here, the property is situated between both residential and agricultural land. Thus, the land may be adapted for either residential or agricultural uses. The Nyes used the land in a manner consistent with residential use year round. The Nyes planted grass in the area, which is consistent with the use of the property as part of the yard of their residence. The Nyes then cared for the property by mowing the grass during warm weather, storing and burning tree limbs in the area, and erecting a snow fence. Although mowing and the erection of a snow fence are seasonal activities, unlike in *Hardt v. Eskam, supra*, where activity was intermittent for only a few weeks or months of the year, the Nyes used tract 2 as residential property year round. The mowing of the grass during summer and the erection of a snow fence in winter left the property in a continuous state of use for purposes of determining adverse possession. We conclude there is an issue of fact whether the Nyes' use of the property was continuous.

## EXCLUSIVE

The court also concluded that Fire Group was entitled to summary judgment because the Nyes did not exclusively use the property. The court's decision appears to rely on Gottsch's testimony that he occasionally parked farm equipment on the property and occasionally used part of the property to turn his machinery around.

We have said that where both parties have used the property in dispute, there can be no exclusive possession by one party. *Thornburg v. Haecker*, 243 Neb. 693, 502 N.W.2d 434 (1993). But the law also does not require that adverse possession be evidenced by complete enclosure and 24-hour use of the

property. See, *Rush Creek Land & Live Stock Co. v. Chain*, 255 Neb. 347, 586 N.W.2d 284 (1998); *Young v. Lacy*, 221 Neb. 511, 378 N.W.2d 192 (1985). It is sufficient if the land is used continuously for the purposes to which it may be adapted. *Id.* Evidence must show the intention of the claimant to appropriate and use the property as his own to the exclusion of all others. *Young v. Lacy, supra.*

Here, the record contained evidence that Gottsch occasionally parked farm equipment on tract 2, but never to the east of the fenceposts because that would upset the Nyes. He also may have used part of the property on occasion when he turned his machinery around. The Nyes presented evidence that they never saw Gottsch use the property and that they continuously used the property as part of their yard. Thus, the Nyes presented evidence of exclusive use of the property. Whether Gottsch used part of the tract is an issue of material fact relevant to the determination of exclusivity. Further, even if Gottsch occasionally parked machinery on the property and used part of it as a turnaround, the frequency of the use affects a determination of exclusivity. That Gottsch stated that he did not park to the east of the fenceposts because that would upset the Nyes could also lead to the finding that the Nyes adversely possessed part, if not all, of the tract. Under these circumstances, there are issues of material fact affecting the question whether the Nyes exclusively used the property. Finally, the Nyes presented evidence indicating that they might have adversely possessed the property for 10 years before Gottsch began farming it, which would make Gottsch's testimony irrelevant. We conclude that there is an issue of material fact whether the Nyes exclusively possessed the property.

## PERMISSION

The court also sustained Fire Group's motion for summary judgment because it determined that the Nyes used the property with permission. Permissive use of property can never ripen into title by adverse possession unless there is a change in the nature of possession brought to the attention of the owner in some plain and unequivocal manner that the person in possession is claiming adversely thereby. *Wanha v. Long*, 255 Neb. 849, 587 N.W.2d 531 (1998).

Here, the only evidence that the Nyes were given permission to use the disputed property was a statement made by Gottsch in which he said the Nyes had permission; but he provided no details. We also read one of Fire Group's arguments to be that Gottsch's occasional use of the property showed that the Nyes were using the property with permission. The Nyes deny that they knew the property belonged to someone else and that they were using it with permission. The record contains a statement that Gottsch's father once asked that the snow fence be removed, but this alone does not constitute an express permission for the Nyes to use the property. The record also contains a statement from Gottsch that the fence was in the field when the Nyes were asked to remove it. Further, the Nyes deny that they were ever asked to remove the fence. Likewise, although evidence shows that Gottsch occasionally parked or drove equipment on the property, the Nyes presented evidence to dispute that. An occasional use of the property by Gottsch does not equate with Gottsch's giving the Nyes permission to use the property. Instead, the occasional use is more relevant to the issue of whether the Nyes exclusively used the property. We conclude there is an issue of material fact whether the Nyes used the property with permission. Thus, the court erred when it granted summary judgment on that determination.

## CONCLUSION
We conclude that there are issues of material fact about whether the Nyes' use of the property was open and notorious, whether they exclusively and continuously possessed the property, and whether they possessed the property with permission. We reverse, and remand for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.