Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/25/2016 09:05 AM CDT

George Poullos and Jody Poullos, appellees,
v. Pine Crest Homes, LLC, a Nebraska
limited liability company, appellant.

___ N.W.2d ___

Filed March 25, 2016.    No. S-15-236.

1. **Equity: Quiet Title.** A quiet title action sounds in equity.
2. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.
3. **Adverse Possession: Proof: Time.** A party claiming title through adverse possession must prove by a preponderance of the evidence that the adverse possessor has been in (1) actual, (2) continuous, (3) exclusive, (4) notorious, and (5) adverse possession under a claim of ownership for the statutory period of 10 years.
4. **Adverse Possession: Notice.** The acts of dominion over land allegedly adversely possessed must, to be effective against the true owner, be so open, notorious, and hostile as to put an ordinarily prudent person on notice of the fact that the lands are in adverse possession of another.
5. **Adverse Possession.** If an occupier's physical actions on the land constitute visible and conspicuous evidence of possession and use of the land, that will generally be sufficient to establish that possession was notorious.
6. ____. Although the enclosure of land renders the possession of land open and notorious, it is not the only way by which possession may be rendered open and notorious. Nonenclosing improvements to land, such as erecting buildings or planting groves or trees, which show an intention to appropriate the land to some useful purpose, are sufficient.
7. **Adverse Possession: Notice.** An adverse possession must be sufficiently notorious to give notice to the record owner that his title or ownership is in danger so that he may, within the period of limitation, take action to protect his interest.

8. **Adverse Possession.** Platted land is no less subject to adverse posses-
   sion than unplatted land. To hold otherwise would defeat the historical
   and general application of the doctrine of adverse possession.

Appeal from the District Court for Douglas County: Timothy
P. Burns, Judge. Reversed and remanded with directions.

Jeffrey A. Nix, of Pansing, Hogan, Ernst & Bachman, L.L.P.,
for appellant.

James T. Boler, P.C., L.L.O., for appellees.

Heavican, C.J., Wright, Connolly, Miller-Lerman, Cassel,
and Stacy, JJ.

Stacy, J.

## FACTS

In November 2001, George Poullos and Jody Poullos pur-
chased a home and residential property on lot 368 in an
Omaha, Nebraska, subdivision. When they purchased the
home, it was fully completed; sod had been laid on the lot,
an underground sprinkler system had been installed, and a
sidewalk had been constructed. The Poulloses believed their
property extended to the edge of the sod line—a line that
was just outside the sprinkler system and perpendicular to
the end of the sidewalk. From 2001 on, George continuously
mowed, fertilized, and watered the sod. He also maintained
the sprinkler system. In the winter, George cleared the side-
walk of snow.

At the time the Poulloses purchased and moved into their
home, the property directly adjacent to the north, lot 367, was
vacant. The vacant lot was generally covered with dirt and
weeds. A photograph taken in about November 2001 shows a
demarcation between the sod line and the vacant lot. Global
positioning system photographs and other evidence admitted at
trial generally demonstrated that the sod line demarcation con-
tinued over the ensuing 10 to 12 years, but became less even
over time as the sod spread.

Lot 367 remained vacant until 2013, when Pine Crest Homes, LLC, began constructing a home. A survey revealed that a wedged-shaped section of land consisting of portions of the sod and sprinkler system maintained by the Poulloses was actually part of lot 367, not lot 368. The area in dispute is about 667 square feet of land.

In April 2013, the Poulloses filed a complaint for injunctive relief and to quiet title. They attempted to stop the construction of the home on lot 367 and asked that title to the wedge-shaped section of land in dispute be quieted in them based on the theory of adverse possession. The district court denied injunctive relief but, after conducting a bench trial, found the Poulloses had established all of the elements of adverse possession and quieted title to the disputed land in their favor. Pine Crest Homes timely filed this appeal, and we moved the case to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[1] For the reasons discussed below, we reverse, and remand with directions to enter judgment for Pine Crest Homes.

## ASSIGNMENTS OF ERROR

Pine Crest Homes assigns, restated, that (1) the district court erred in finding the Poulloses had established all the elements of adverse possession and (2) the legal description of the disputed property offered by the Poulloses was insufficient to support quieting title in their favor.

## STANDARD OF REVIEW

[1,2] A quiet title action sounds in equity.[2] On appeal from an equity action, an appellate court decides factual questions

---

[1] Neb. Rev. Stat. § 24-1106(3) (Supp. 2015).

[2] *Obermiller v. Baasch*, 284 Neb. 542, 823 N.W.2d 162 (2012); *Newman v. Liebig*, 282 Neb. 609, 810 N.W.2d 408 (2011).

de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.[3]

## ANALYSIS

[3] The Poulloses sought to quiet title under the theory of adverse possession. A party claiming title through adverse possession must prove by a preponderance of the evidence that the adverse possessor has been in (1) actual, (2) continuous, (3) exclusive, (4) notorious, and (5) adverse possession under a claim of ownership for the statutory period of 10 years.[4] Here, the district court found the Poulloses' possession was actual, continuous, exclusive, and under a claim of ownership for a period of at least 10 years. Upon de novo review, we conclude the district court correctly found the Poulloses' possession of the contested area was actual, continuous, exclusive, and under a claim of ownership for a period of at least 10 years.

Here, the central issue on appeal is whether the Poulloses' possession was also "notorious." The district court found it was, relying heavily on the visible sod line between the properties and the Poulloses' physical acts of maintaining the sod and clearing the sidewalk. We disagree.

[4-6] The acts of dominion over land allegedly adversely possessed must, to be effective against the true owner, be so open, notorious, and hostile as to put an ordinarily prudent person on notice of the fact that the lands are in adverse possession of another.[5] If an occupier's physical actions on

[3] *Stacy M. v. Jason M.*, 290 Neb. 141, 858 N.W.2d 852 (2015); *SID No. 196 of Douglas Cty. v. City of Valley*, 290 Neb. 1, 858 N.W.2d 553 (2015).

[4] *Inserra v. Violi*, 267 Neb. 991, 679 N.W.2d 230 (2004); *Nye v. Fire Group Partnership*, 265 Neb. 438, 657 N.W.2d 220 (2003).

[5] *Nye v. Fire Group Partnership, supra* note 4; *Gustin v. Scheele*, 250 Neb. 269, 549 N.W.2d 135 (1996).

the land constitute visible and conspicuous evidence of possession and use of the land, that will generally be sufficient to establish that possession was notorious.[6] Although the enclosure of land renders the possession of land open and notorious, it is not the only way by which possession may be rendered open and notorious.[7] Rather, nonenclosing improvements to land, such as erecting buildings or planting groves or trees, which show an intention to appropriate the land to some useful purpose, are sufficient.[8]

The Poulloses rely heavily on our decision in *Wanha v. Long*.[9] There, Donald and Lee Wanha moved into a home on lot 105 in an Omaha subdivision in 1965. When the Wanhas purchased their home, lot 105 had no lawn and no sidewalk. The adjacent lot, 104, however, was sodded and had a sidewalk along the lot frontage. The Wanhas installed a connecting sidewalk and planted grass seed up to and abutting the sodded area of lot 104. In 1973 or 1974, the owners of lot 104 built a fence along the seeded grass/sod line; this fence remained in place for at least the next 20 years.

In 1996, the owners of lot 104 obtained a survey and discovered the actual platted lot line of lot 104 extended into the area the Wanhas had seeded and had been maintaining. The Wanhas eventually sought title to the disputed area via adverse possession. The trial court found that from 1965 to 1996, the boundary line was the sod/fence line, and ruled in favor of the Wanhas. We affirmed. In doing so, we noted that the evidence showed the Wanhas were the only persons to use the disputed property during the relevant time period. We also found that their use was not clandestine, noting that

---

[6] *Nye v. Fire Group Partnership, supra* note 4.

[7] *Wanha v. Long*, 255 Neb. 849, 587 N.W.2d 531 (1998).

[8] *Id.*

[9] *Id.*

the owner of lot 104 was aware of the use. Although we did not expressly rely on the existence of the fence, from 1973 to 1996, the existence of that openly visible improvement further supported an award of adverse possession in favor of the Wanhas.

In other cases where we have found adverse possession of property to be sufficiently notorious, the use of the land similarly included something more than general acts of maintenance. For example, in *Purdum v. Sherman*,[10] we found the possession was notorious when the adverse holder's cattle grazed the disputed land. And in *Nye v. Fire Group Partnership*,[11] we reversed a finding that the possession was not notorious as a matter of law, where the adverse holders "planted grass, mowed and maintained the property, erected a snow fence in the winter, and left the 5- to 6-foot-high fenceposts permanently in place."

[7] Our prior cases illustrate that an adverse possession must be sufficiently notorious to give notice to the record owner that his title or ownership is in danger so that he may, within the period of limitation, take action to protect his interest.[12] In the present case, our de novo review indicates this threshold was not met, because neither the Pollouses' use of the land nor the improvements to the land were sufficiently notorious to pass title by adverse possession. Before the Poulloses purchased lot 368, the prior owner installed an underground sprinkler system which extended partially onto the neighboring lot and laid sod which extended partially onto the neighboring lot. While the installation of sod and underground sprinklers were both improvements to the land, they were not conspicuous. Abutting lawns are ubiquitous in

---

[10] *Purdum v. Sherman*, 163 Neb. 889, 81 N.W.2d 331 (1957).

[11] *Nye v. Fire Group Partnership, supra* note 4, 265 Neb. at 443, 657 N.W.2d at 224-25.

[12] *Purdum v. Sherman, supra* note 10.

residential neighborhoods, and here neither the underground sprinkler system nor the sprinkler heads were visible. Though we assume water spray was visible when the sprinkler system was operating, there is nothing in the record indicating the time of day or the frequency with which the sprinklers were operated during the 10-year period, so no reasonable conclusions can be drawn about the visibility of the sprinkler's overspray during the relevant timeframe. The Poulloses made no other visible improvements to the disputed land that might indicate a claim of ownership, such as planting trees or installing a shed, fence, or playset on the land.

Nor was the Poulloses' act of regularly mowing and watering a strip of lot 367 while performing their own lawn maintenance on lot 368 the sort of notorious act that supports adverse possession. As this court has said, "'It is the nature of the hostile possession that constitutes the warning, not the intent of the claimant when he takes possession.'"[13] Acts of routine yard maintenance, without more, are not sufficiently notorious to warn the titleholder that another is claiming or using the land for his own purpose. Something more than a neighbor watering and mowing over the property line is needed to alert a reasonable owner that his title is in danger and he must take steps to protect his interest.

Upon de novo review, we find the Poulloses have failed to prove, by a preponderance of the evidence, that their possession of the disputed property was sufficiently notorious to support a claim of adverse possession. Because we reach this conclusion, we need not address the second assignment of error.

[8] We note Pine Crest Homes also argues that the doctrine of adverse possession should not apply in platted subdivisions as a matter of public policy. We specifically rejected such an

---

[13] *Pettis v. Lozier*, 217 Neb. 191, 196, 349 N.W.2d 372, 375-76 (1984).

argument in *Wanha v. Long*,[14] reasoning that "'platted land is no less subject to adverse possession than unplatted land. To hold otherwise would defeat the historical and general application of the doctrine'" of adverse possession. We adhere to that holding.

## CONCLUSION

For the foregoing reasons, we reverse the district court's order quieting title in favor of the Poulloses and remand the cause with directions to enter judgment in favor of Pine Crest Homes.

REVERSED AND REMANDED WITH DIRECTIONS.

---

[14] *Wanha v. Long, supra* note 7, 255 Neb. at 863, 587 N.W.2d at 542.