Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/23/2018 08:14 AM CDT

Kevin Royal, appellant and cross-appellee, v.
Loma McKee and Edmund R. McKee, wife and
husband, now deceased, et al., appellees,
and Omaha Public Power District,
appellee and cross-appellant.

___ N.W.2d ___

Filed December 29, 2017.    No. S-16-708.

1. **Equity: Quiet Title.** A quiet title action sounds in equity.
2. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court, provided that where credible evidence is in conflict in a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
3. **Adverse Possession: Proof: Time.** A party claiming title through adverse possession must prove by a preponderance of the evidence that the adverse possessor has been in (1) actual, (2) continuous, (3) exclusive, (4) notorious, and (5) adverse possession under a claim of ownership for the statutory period of 10 years.
4. **Actions: Default Judgments: Complaints: Damages: Proof.** Where a defendant is in default, the allegations of the complaint are to be taken as true against him, except allegations of value and amount of damage. Thus, if the complaint states a cause of action, the plaintiff is entitled to judgment without further proof.
5. **Easements: Adverse Possession: Notice.** Under Nebraska law, a permissive use is not adverse and cannot ripen into an easement. If a use begins as a permissive use, it retains that character until notice that the use is claimed as a matter of right is communicated to the owner of the servient estate.

Appeal from the District Court for Otoe County: Jeffrey J. Funke, Judge. Affirmed in part, and in part vacated.

Donald J. Pepperl, P.C., L.L.O., for appellant.

Mark C. Laughlin and Jacqueline M. DeLuca, of Fraser Stryker, P.C., L.L.O., for appellee Omaha Public Power District.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, and Kelch, JJ.

Heavican, C.J.

## INTRODUCTION

Kevin Royal filed a quiet title action against his predecessors in interest and against Omaha Public Power District (OPPD) alleging fee title ownership of certain land along the railroad right-of-way passing through his property as a result of adverse possession. OPPD filed a counterclaim, alleging that it had acquired fee simple title to that same land, also under a theory of adverse possession.

The district court granted Royal's motion for entry of default as to his predecessors in interest, but following a trial, denied both Royal's and OPPD's claims of title under adverse possession. Royal appealed, and OPPD cross-appealed. We affirm in part, and in part vacate.

## FACTUAL BACKGROUND

### Prior Litigation

Royal filed a second amended complaint alleging that he was the owner of certain real property located in Otoe County, Nebraska. He further alleged that OPPD possessed a railroad right-of-way easement which ran through his property. Finally, Royal alleged that he obtained title of the railroad right-of-way by adverse possession and that title should be quieted in his name.

OPPD filed an answer and affirmative defenses, and a counterclaim and cross-claim. OPPD alleged that it was the owner of 100 feet on either side of the center of the rail line running through Royal's property, that OPPD acquired this land by adverse possession, and that title should be quieted in its name.

Various orders from the Otoe County District Court in this litigation predate the order at issue on appeal. In one such order, Royal had filed an action against OPPD alleging damages incurred as a result of its construction of an electricity transmission line within the railroad right-of-way. The district court held that Midland Pacific Railway Company, later Burlington Northern and Santa Fe Railway Company (BNSF), had obtained a railroad right-of-way by eminent domain in 1869 and that the railroad right-of-way had been continuously used since that time for the operation of a railroad. OPPD obtained the railroad's right-of-way from BNSF by quitclaim deed in 1998. The district court held that OPPD did not own fee title to the right-of-way, but acquired an easement in the right-of-way that "traverses across" Royal's property.

In that case, the district court held that OPPD's erection of transmission lines from Lincoln, Nebraska, to Nebraska City, Nebraska, along the railroad line was not an incidental use associated with the operation of a railroad line, but instead was a separate and distinct activity which was not part of the rights acquired through the original 1869 condemnation action.

Another order issued earlier in this litigation provided that as a result of the deeds which ultimately transferred Royal's property to him, Royal was not the titled owner of the railroad right-of-way. As such, Royal's appeal seeking damages from a board of appraisers as a result of the construction of the transmission line was dismissed.

Finally, early in the matter on appeal, an order was filed entering default against all defendants except OPPD. The district court then concluded that the "sole determination left to

be made . . . is whether either Royal or OPPD have proven by a preponderance of the evidence" that they have acquired title to the railroad right-of-way by adverse possession.

## History of Ownership

The ownership at issue dates back to the condemnation action granting OPPD's predecessor in interest a railroad right-of-way easement in 1869. OPPD took possession of its predecessor's interest in 1998.

On January 4, 1930, Loma McKee and Edmund R. McKee, wife and husband, and Lois B. Nelson and Obel T. Nelson, wife and husband, conveyed a portion of the land now belonging to Royal to William E. Beecham. This conveyance specifically excluded the right-of-way. On March 11, 1944, Loma McKee (now widowed) and Lois B. Bennefield, formerly Lois B. Nelson, and her husband Benny Bennefield, conveyed the remaining portion of Royal's property to John McCarthy, again specifically excluding the railroad right-of-way. Through various deeds and conveyances from 1987 to 2012, Royal's property was conveyed to him. Those deeds and conveyances always excluded the railroad right-of-way.

As a result of the conveyances specifically excluding the railroad right-of-way, Loma McKee and Lois Bennefield continued to hold fee simple title to that portion of the subject property located within the railroad right-of-way. Any interest that Loma McKee, Lois Bennefield, or their heirs, devisees, legatees, or personal representatives may have had was extinguished by the order of default entered March 17, 2015.

## Royal's Use of Property

The record shows that Royal lived in a farmhouse on the property adjacent to the right-of-way on and off from 1989 to 2012. Royal testified that in 1989, he began to assist his father and uncle in farming the property. In conjunction with the farming operation, during that period of time, parts of the right-of-way were utilized by Royal's father and uncle

for uses such as driving farm equipment in the right-of-way, planting and harvesting crops in the right-of-way, using the right-of-way to pasture and chase livestock and to drive four-wheelers, and using the right-of-way to store hay, hunt, and hike, and to access the adjacent creek. Royal's father and uncle also removed trees and brush from the right-of-way, mowed weeds in the right-of-way, and maintained the fence. Most of this was done in the outer 50 feet of the right-of-way. Royal also testified that much of this activity was done on a sporadic basis.

OPPD's Use of Property

The evidence at trial shows the railroad right-of-way had been used continuously for railroad purposes since its estab-lishment and that OPPD had been in control of the right-of-way since 1998. The record shows that OPPD had rou-tinely used the right-of-way and expended significant funds to maintain it. OPPD had authorized BNSF and Union Pacific to use the line, referred to as the "Arbor Line," to deliver coal to OPPD's Nebraska City powerplant and to carry other goods to consumers located along the line. The Arbor Line had also been used by OPPD to store railcars for other rail-road entities.

It is not entirely clear from the record whether OPPD ran trains on the line at the time of trial. One witness, formerly employed by OPPD, testified that trains were still operated on the line at the time of his retirement in 2013. But Royal testi-fied that he had not seen a train on the line in the 5 years prior to trial (or from approximately 2011).

An OPPD representative testified that when not using prop-erty it owns, OPPD often leased property to others, and that where leases were not in place, adjoining landowners were often permitted to use the land for farming purposes, because such use promotes goodwill and keeps the land maintained. The representative testified that he had informed Royal that OPPD owned the right-of-way (in accordance with OPPD's

erroneous belief that they had purchased the fee title and not an easement over this right-of-way) and that OPPD was aware Royal was using the right-of-way for farming purposes and had observed Royal on the land.

## DISTRICT COURT'S DECISION

Following a bench trial, the district court found that neither Royal nor OPPD had established the elements of adverse possession and that thus, title could not be quieted as to either party.

## ASSIGNMENTS OF ERROR

On appeal, Royal alleges 22 assignments of error, which can be restated and consolidated into 3 assignments of error: that the district court erred in (1) "not finding that since the ownership interest of the fee title holders of record [was] extinguished by its Order of March 17, 20[15], that neither . . . Royal nor . . . OPPD proved . . . that he/it was entitled to judgment quieting title in that party by reason of adverse possession," (2) making or failing to make multiple factual findings, and (3) not finding that Royal had proved his claim of adverse possession.

On cross-appeal, OPPD assigns that the district court erred in finding that OPPD did not adversely possess the real property.

## STANDARD OF REVIEW

[1,2] A quiet title action sounds in equity.[1] On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court, provided that where credible evidence is in conflict in a material issue of fact, the appellate court considers and may give weight to the fact that the trial

---

[1] *Poullous v. Pine Crest Homes*, 293 Neb. 115, 876 N.W.2d 356 (2016).

judge heard and observed the witnesses and accepted one version of the facts rather than another.[2]

In an appeal from the entry of a default judgment, an appellate court will affirm the action of the trial court in the absence of an abuse of discretion.[3]

## ANALYSIS

Both Royal's appeal and OPPD's cross-appeal raise the issue of whether either party had obtained title to the 200-foot right-of-way as a result of adverse possession.

[3] A party claiming title through adverse possession must prove by a preponderance of the evidence that the adverse possessor has been in (1) actual, (2) continuous, (3) exclusive, (4) notorious, and (5) adverse possession under a claim of ownership for the statutory period of 10 years.[4]

### Neb. Rev. Stat. § 39-1404 (Reissue 2016)

Before we turn to Royal's assignments of error, we address OPPD's contention that Royal cannot adversely possess the railroad right-of-way, because § 39-1404 prohibits such ownership. Section 39-1404 provides:

> No privilege, franchise, right, title, right of user, or other interest in or to any street, avenue, road, thoroughfare, alley or public grounds in any county, city, municipality, town, or village of this state, or in the space or region under, through or above any such street, avenue, road, thoroughfare, alley, or public grounds, shall ever arise or be created, secured, acquired, extended, enlarged or amplified by user, occupation, acquiescence, implication, or estoppel.

---

[2] *Klein v. Oakland/Red Oak Holdings*, 294 Neb. 535, 883 N.W.2d 699 (2016).

[3] *State of Florida v. Countrywide Truck Ins. Agency*, 258 Neb. 113, 602 N.W.2d 432 (1999).

[4] *Klein v. Oakland/Red Oak Holdings, supra* note 2.

We generally agree with OPPD that this section prohibits land owned by a political subdivision from an ownership change as a result of, among other means, adverse possession. But even assuming that OPPD is a political subdivision for purposes of this section, we find OPPD's contention to be without merit.

The district court has already concluded that OPPD does not own the fee title to the right-of-way and owns only an easement; thus, quieting fee title in Royal would not affect OPPD's interest. And to the extent OPPD might argue that Royal seeks to convert OPPD's easement by adverse possession, we note that Royal concedes that OPPD owns such easement and does not seek to prevent OPPD's ownership of the easement. On these facts, § 39-1404 has no application.

### EFFECT OF EARLIER DEFAULT

We now address Royal's first assignment of error, in which he assigns that the district court erred in "not finding that since the ownership interest of the fee title holders of record [was] extinguished by its Order of March 17, 20[15], that neither . . . Royal nor . . . OPPD proved . . . that he/it was entitled to judgment quieting title in that party by reason of adverse possession."

Royal sought to quiet title on the basis of adverse possession against both OPPD and all prior owners of the property and their heirs and devisees. It appears this was done because the district court had, in prior but related litigation, determined that the right-of-way had remained with the original owners and had not been conveyed from owner to owner when the remainder of the property was transferred. Service on those individuals was done by publication. OPPD was the only defendant to file an appearance.

As a result of the lack of appearance, Royal sought an entry of default against all parties except OPPD. Royal and OPPD stipulated that the motion should be granted. The district court accordingly signed an order stating that "[b]y failing to

answer both [Royal's] Complaint and . . . OPPD's Crossclaims, all Defendants, except . . . OPPD, have relinquished any rights they may have had to the land at issue in the above-captioned matter."

[4] The general rule is that "'where a defendant is in default, the allegations of the [complaint] are to be taken as true against him, except allegations of value and amount of damage.'"[5] Thus, if the complaint states a cause of action, the plaintiff is entitled to judgment without further proof.

But we have also held that a trial court should defer from entering a default judgment against one of multiple defendants when doing so could result in inconsistent and illogical judgments following a determination on the merits as to the defendants not in default.[6]

The facts presented by this appeal demonstrate how the entry of default judgment may lead to an inconsistent and illogical result. While the district court granted default judgment, that default judgment was insufficient to quiet title in Royal or OPPD, because it did not settle the dispute between those parties. Rather, all the entry of default judgment did was extinguish the rights of the prior landowners. And as we find in further detail below, by extinguishing the rights of the prior landowners, and then finding that neither Royal nor OPPD had established the elements of adverse possession, the 200 feet of this right-of-way are effectively owned by no one. This is an illogical result that should be avoided.

We observe that the district court did not err when it ultimately held that the entry of default did not lead to the quieting of title in Royal. However, that portion of the district court's order granting default that extinguished the rights of the prior landowners led to an illogical result and was an

---

[5] *Turbines Ltd. v. Transupport, Inc.*, 285 Neb. 129, 137, 825 N.W.2d 767, 774 (2013).

[6] *State of Florida v. Countrywide Truck Ins. Agency, supra* note 3.

abuse of discretion. As such, we vacate that portion of the entry of default.

## ALLEGED FACTUAL ERRORS

In his second assignment of error, Royal alleges various factual findings as erroneous. Our standard of review is de novo on the record, and we reach a conclusion independent of the decision of the district court. As such, we will not address Royal's claims as to the district court's factual findings. There is no merit to Royal's second assignment of error.

## OPPD's CLAIM OF
## ADVERSE POSSESSION

We next turn to OPPD's cross-appeal. In it, OPPD claims the district court erred in concluding that it had not established that it adversely possessed the right-of-way.

Our starting point is the conclusion which is the law of the case, that OPPD owns an easement over the right-of-way and not a fee simple. That easement was obtained in 1869, and a railroad was continuously operated on the land by various entities. OPPD acquired the line, known as the Arbor Line, in 1998. Since that time, OPPD authorized BNSF, Union Pacific, and other railroad companies to deliver goods along the line. OPPD also used the line to store railcars for various entities. These uses are permissive and a direct or incidental use associated with the operation of a rail line.

[5] Under Nebraska law, a permissive use is not adverse and cannot ripen into an easement.[7] If a use begins as a permissive use, it retains that character until notice that the use is claimed as a matter of right is communicated to the owner of the servient estate.[8] As such, OPPD's use of the line for railroad purposes was not hostile and therefore cannot ripen into ownership by adverse possession.

---

[7] See *Fischer v. Grinsbergs*, 198 Neb. 329, 252 N.W.2d 619 (1977).

[8] *Gerberding v. Schnakenberg*, 216 Neb. 200, 343 N.W.2d 62 (1984).

The character of OPPD's use changed when the transmission line was constructed in approximately 2007. However, on these facts this use was insufficient to establish adverse possession. OPPD filed its counterclaim, asserting that it had adversely possessed the right-of-way in January 2015. This date is less than 10 years after construction of the line. As such, the 10-year time requirement for a claim of adverse possession has not been met.

The district court did not err in finding that OPPD had not established the elements of adverse possession. OPPD's argument on cross-appeal is without merit.

## Royal's Claim of
## Adverse Possession

Having concluded that OPPD did not establish the elements of adverse possession, we turn to Royal's third assignment of error. Royal contends that the district court erred in not quieting title in the 200-foot right-of-way in his name based upon his adverse possession of that property.

In his second amended complaint, Royal sought title to the entire 200 feet of the right-of-way. The district court found that Royal had not met the elements of adverse possession and thus title could not be quieted in Royal:

> Though [Royal] and his predecessors in interest have owned the property surrounding the railroad right-of-way for more than ten years, their use of the property has been sporadic in occurrence and sporadic in location. More specifically, the majority of activities, other than farming, described by Royal have occurred randomly over a nineteen year period. Those uses, such a [sic] walking or riding four wheelers along the right-of-way or allowing hunters access to the right-of-way have occurred so rarely that the same could not be sufficient to put anyone on notice that Royal was intending to claim the right-of-way as his own property.

Further, the evidence indicates that farming was done routinely upon portions of the right-of-way during that same 19 year period. However, the farming was being done with the tacit approval of OPPD who was holding itself out as the owner of the property. Further, though the farming was allegedly done on an annual basis, it was only done during the planting, growing and harvesting periods and not done consistently throughout each year.

Lastly, the survey presented at trial merely provides a legal description for the entirety of the right-of-way and the outer fifty feet of both sides of the right-of-way. The evidence is clear that Royal has not used the entire right-of-way for his own purposes; that he has rarely used the interior 100 feet of the right-of-way; and has only used portions of the outer 50 feet of the right-of-way for his own purposes. There has not been sufficient evidence presented to adequately describe the land with enough particularity to enable this court to exact the extent of the land adversely possessed and to enter a judgment upon the description. As a result, Royal's use and maintenance of the right-of-way for his own purposes cannot be considered actual, continuous, exclusive, notorious, and adverse under a claim of ownership for the statutory period of 10 years and, therefore, his claim of adverse possession must fail under these [sic] set of facts.

We agree that there is some evidence in the record that lends support to Royal's claim of adverse possession. But applying our de novo standard of review, we must affirm the trial court's finding that Royal did not establish his claim of adverse possession as to the 200 feet of the right-of-way claimed in his amended complaint.

An expert witness for Royal who surveyed the right-of-way testified that there was evidence of farm operations, including tilled land and crop residue. But he observed the property only at the time he conducted the survey. While this testimony

supports the conclusion that some of the land had been used for farming operations, it does not support the conclusion that it was done for a continuous period of time sufficient to prove a claim of adverse possession.

Royal himself testified that there was no area in the outside 50 feet on each edge of the right-of-way that was not utilized in some manner, whether it was farmed or used for pastureland, hay land, or drainage. But Royal also acknowledged that he had not continuously lived on the property and had not continuously assisted with the farming of the property. This limits the weight of Royal's evidence on this point.

Moreover, we note that Royal's credibility was challenged by contrary statements that he made during depositions in this case. The trial court heard and observed the witness, and in finding that Royal had not established the elements of adverse possession, gave greater weight to Royal's deposition testimony.

On the record before us, giving deference to the trial court, who heard and observed the witnesses and accepted one version of the facts rather than another,[9] we find that Royal did not establish the elements of adverse possession as to the 200 feet of the railroad right-of-way and, as such, is not entitled to have title quieted in his name. Royal's final assignment of error is without merit.

## CONCLUSION

The district court's order denying both Royal's and OPPD's claims for adverse possession are affirmed. The order granting default judgment to Royal and OPPD and extinguishing the property rights of the prior owners is vacated.

AFFIRMED IN PART, AND IN PART VACATED.

WRIGHT, J., not participating in the decision.
FUNKE, J., not participating.

---

[9] See *Klein v. Oakland/Red Oak Holdings, supra* note 2.