IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


AHRENS V. TICHOTA


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


DONALD R. AHRENS AND KENNETH L. AHRENS, APPELLEES,

V.

JASON M. TICHOTA AND GINA R. TICHOTA, APPELLANTS.


Filed August 27, 2019.    No. A-18-094.


Appeal from the District Court for Otoe County: MICHAEL A. SMITH, Judge. Reversed and remanded for further proceedings.

Mark S. Dickhute for appellants.

Thomas D. Prickett, of Reinsch, Slattery, Bear & Minahan, P.C., L.L.O., for appellees.


PIRTLE, ARTERBURN, and WELCH, Judges.

PIRTLE, Judge.

### INTRODUCTION

Jason M. Tichota and Gina R. Tichota (hereinafter the appellants) appeal from an order granting summary judgment in favor of Donald R. Ahrens and Kenneth L. Ahrens (hereinafter the appellees) entered by the district court for Otoe County. For the reasons stated below, we reverse and remand for further proceedings.

### BACKGROUND

The appellees are farmers. They lease ground from the Union Pacific Railroad (UPRR) where they have constructed grain bins and other personal property. In order to access the grain bins on the leased ground they must traverse property owned by the appellants. The district court concluded there were no material facts in dispute and the appellees had established entitlement to a "public prescriptive easement" across the appellants' land in order to access the grain bins.

- 1 -

On September 19, 2003, the appellants purchased 8.1 acres in Otoe County, Nebraska, commonly known as 5716 Deer Road, Nebraska City, Nebraska, but legally described as

> part of the Northeast Quarter of Section 23, Township 9, Range 13 in Otoe County, Nebraska, more particularly described as: commencing at the SW 1/4 of said NE 1/4, thence North 576 feet to a point on the West line of said quarter section, thence East 528 feet to a point, thence Northward about 50 feet to a point on the west boundary of the Missouri Pacific right of way, thence Southeasterly along the West line of said right of way to the South line of said NE 1/4 of said Section thence West about 833 feet to the place of beginning.

The property includes a residence, a pasture, out buildings, and Deer Road. Access to the appellants' home is by way of Deer Road, which connects with North Highway 57, and Deer Road is entirely within the legal description of the appellants' property.

Margaret Ross and Clarence Ross owned the above-described property immediately prior to the appellants. The Rosses purchased the property in October 1957. Sometime in the late 1970's Loren Haveman purchased the leasehold improvements on the UPRR right of way now owned by the appellees. Haveman used the leasehold improvements to operate the Haveman Grain Company until the improvements were sold to the appellees in August 1998. Haveman's affidavit is some evidence of the early use of Deer Road as a route to the grain bins by area farmers. Haveman used Deer Road during the same time the Rosses were using Deer Road and he never heard any objection from the Rosses about his use of the road. Affidavits from other area farmers establish use of Deer Road to access Haveman Grain Company but the property which includes Deer Road was always owned by someone else dating from 1858.

When the appellants moved into the property they started noticing their adjoining neighbors to the north, Larry Starner and his wife (the Starners), were using Deer Road to access their pasture even though they had alternative access on North Highway 57. Since the Starners were good neighbors and their use had minimal impact on Deer Road, Jason advised Larry he was permitted to continue the use of Deer Road.

The appellants also noticed the appellees' use of Deer Road and in the summer of 2007, Jason approached the appellees in an effort to reach a similar "permissive use" understanding.

While the Starners use of Deer Road did no harm, Jason complained to the appellees that their use of the road by large farm equipment and fully loaded semi tractor-trailers had resulted in annual expenditures of $700 to $800 for grading and rocking expenses. Jason is an engineer by education and training and he calculated that one semi-trailer trip over Deer Road, when loaded, is equivalent to 90 trips by a passenger car. Jason suggested the appellees might like to chip in for maintenance of the appellants' private road. The appellees told Jason they were not willing to be responsible for any maintenance since they believed the road to be public and the county should be responsible for the maintenance, but, if any other party might be responsible, Jason should check with the UPRR. The appellees had been using Deer Road to access improvements on the UPRR right-of-way pursuant to a leasehold contract with the UPRR since 1998. The appellees told Jason his lease with the UPRR was renewed in 2001 through August 2021.

Jason told the appellees he wanted to be a good neighbor so while he pursued some sort of maintenance arrangement with the UPRR, the appellees were permitted to use Deer Road. The appellees denied ever having been given permission to use Deer Road by either of the appellants.

Negotiations with the UPRR failed in June 2015 and in August 2015, Jason advised both the UPRR and the appellees that continued use of Deer Road after August 31, 2015, would be construed as an "intentional trespass." Permission to use Deer Road extended by Jason to the appellees in 2007, was revoked in 2015 and Jason posted a "Private Property" sign at the top of Deer Road.

After August 31, 2015, Jason made note of continuing use of Deer Road by the appellees as they drove to and from their grain bins. Jason made reports to the county sheriff and the county attorney but no citations were issued in 2015. In early October 2015, Jason encountered Donald at the corner of Highway 75 and County Road "C." Jason stopped to talk to Donald and again tried to persuade him to work out a maintenance agreement. Donald again told Jason he was not interested in any maintenance agreement, and besides, Donald believed he had a "prescriptive easement" over Jason's property. This was the first time Jason had heard of the appellees' "prescriptive easement" claim. Donald warned Jason he had every intention of putting grain in the bins on the UPRR ground which meant using Deer Road. Jason told Donald his use of Deer Road was "at his own risk."

Jason contacted the county attorney for Otoe County in January 2016 after growing frustrated with the lack of action on his trespass claims against the appellees. The county attorney was unaware the appellees had continued to use Deer Road after September 1, 2015, so he wrote Donald a letter in March 2016. The letter advised Donald that it was the county's position that Deer Road is the appellants' private property; that the law presumes use is "permissive by the owner," and that Donald did not have a recorded easement. The county attorney encouraged Donald to find some resolution with Jason since his office considered it a "civil matter" and the sheriff was reluctant to issue citations or make any arrests.

Jason again encountered Donald on Deer Road on June 22, 2016. Donald was towing a tractor and was preparing to remove corn from the bins. Jason called the sheriff and while waiting for his arrival, he engaged Donald in a conversation about whether or not he had received the March letter from the county attorney. Jason walked away since the conversation was not productive and at that point Donald told him to "go to hell." When the sheriff arrived Donald was asked to leave the property and he complied. Jason later learned a trespass ticket was issued for the June 22 incident but the county attorney declined to file charges since this case was underway.

On July 19, 2016, the appellees filed a complaint in equity seeking to quiet title to an alleged prescriptive easement across the appellants' property and for injunctive relief. The appellants responded to the appellees' complaint and affirmatively alleged they had permitted the appellees' use of the driveway from 2003 through 2015 when permission was withdrawn. The appellees set their request for a preliminary injunction for hearing and a retired district court judge was appointed to hear the matter. The appellants sought a permanent injunction which was combined for hearing before the judge.

On August 19, 2016, the judge overruled the appellees' motion for a preliminary injunction. The court found Deer Road is entirely located on the appellants' property as confirmed

by the surveyor for Otoe County. In denying the motion for relief the court said it was the appellees' burden to prove the likelihood of success on the merits which means proving they have a clear right to use Deer Road. Since the appellees failed to produce evidence supporting a conclusion that Deer Road is a public right of way, nor did they produce evidence of having acquired a prescriptive easement over the appellants' private property, the court concluded they are unlikely to prove their right to use Deer Road.

The appellees filed a motion for summary judgment on May 8, 2017, seeking a declaratory judgment that Deer Road is a public right of way or in the alternative that they have a prescriptive easement over Deer Road. On June 28, 2017, the appellants filed a motion for summary judgment quieting title to Deer Road in them and for permanent injunction against the appellees. A hearing was held on July 18, 2017, before a different district court judge, and on November 1, 2017, the district court granted the appellees' motion for summary judgment while also denying the motion filed by the appellants. The court determined there were no material facts in dispute and that a public prescriptive easement existed in Deer Road. The court further found that the appellants were permanently restrained from prohibiting the appellees' use of the road to access their grain bins on the UPRR ground. After various motions were heard after entry of the summary judgment, the appellants appealed to this court on February 1, 2018.

## ASSIGNMENTS OF ERROR

The appellants set out 11 assignments of error, including whether the trial court erred when it refused to quiet title to their land because of the operation of "Nebraska's marketable title statutes," and because summary judgment was not proper given the many questions of material fact which existed. Since this court finds there are material facts in dispute about whether the appellees' use of the road was "permissive," there are several material facts in dispute about whether their use was also "exclusive" and "adverse" for a sufficient span of years.

## STANDARD OF REVIEW

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or the ultimate inferences that may be drawn from those facts, and, that the moving party is entitled to judgment as a matter of law. *Feloney v. Baye*, 283 Neb. 972, 815 N.W.2d 160 (2012). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

As a preliminary matter, the appellants assert the lower court failed to apply "the operation of Nebraska's marketable title statutes" to the facts in this case. However, our examination of the record presented to us demonstrates that none of the pleadings filed in this case raise the applicability or operation of the Marketable Title Act, Neb. Rev. Stat. §§ 76-288 to 76-294 (Reissue 2018). Nor did the appellants raise this issue in their motion for summary judgment, or in opposition to the motion for summary judgment filed by the appellees. As a result, we decline

to consider the question here. See, *First Express Servs. Group v. Easter*, 286 Neb. 912, 840 N.W.2d 465 (2013) (when party raises issue for first time on appeal, appellate court will disregard it because lower court cannot commit error in resolving issue never presented and submitted to it for disposition).

With regard to the remaining assignments of error, it has long been recognized in this jurisdiction, as in others, that a highway may be established by prescription when used adversely by the public continuously for a period of 10 years or more. *Sellentin v. Terkildsen*, 216 Neb. 284, 343 N.W.2d 895 (1984). In order to establish the requisite public prescriptive easement, the public must show that the use and enjoyment of the land was exclusive, adverse, continuous, uninterrupted, open and notorious, and under a claim of right for the full 10-year prescriptive period. *Id.* Furthermore, we have held that in order to establish a roadway in favor of the public by prescriptive easement, there must be a use by the general public under a claim of right adverse to the owner of the land of some particular defined line of travel, and the use must be uninterrupted and without substantial change for 10 years or more, the period of time necessary to bar an action to recover the land. *Id.* Once a claimant shows open, visible, continuous, and unmolested use of the land for the necessary period, the use will be presumed to be under a claim of right, and once so established this presumption may be rebutted by the owner of the servient estate only by proving by a preponderance of the evidence that the use was by license, agreement, or permission. *Id*.

The rules applicable to prescriptive easements are the same and are set out in *Jurgensen v. Ainscow*, 155 Neb. 701, 708-09, 53 N.W.2d 196, 200 (1952), as follows:

> The use and enjoyment which will give title by prescription to an easement is substantially the same in quality and characteristics as the adverse possession which will give title to real estate. It must be adverse, under a claim of right, continuous and uninterrupted, open and notorious, exclusive, with the knowledge and acquiescence of the owner of the servient tenement, for the full prescriptive period.

See, also, *Svoboda v. Johnson*, 204 Neb. 57, 281 N.W.2d 892 (1979); Neb. Rev. Stat. § 25-202 (Reissue 2016). To prove a prescriptive right to an easement, all the elements of prescriptive use must be generally established by clear, convincing, and satisfactory evidence. Then, the owner of the servient estate, in order to avoid the acquisition of the easement by prescription, has the burden of rebutting the prescription by showing the use to be permissive. *Svoboda v. Johnson, supra.*

Here, there are facts in dispute about whether the appellees' use was exclusive and hostile for the prescribed period; whether the appellants have established the appellees' use was by permission; and during which 10-year period from 1858 to the present was the time frame during which a public prescriptive easement may have been established. Accordingly, the grant of summary judgment was in error.

EXCLUSIVE USE

Exclusive use requires some evidence of an intention by the claimant to appropriate and use the property as his or her own to the exclusion of all others. *Nye v. Fire Group Partnership*, 265 Neb. 438, 657 N.W.2d 220 (2003). And if the occupier shared possession with the title owner,

the occupier may not obtain title by adverse possession. *Dugan v. Jensen*, 244 Neb. 937, 510 N.W.2d 313 (1994).

An unbroken chain of title to the property exists from 1858 to 1957 when the Rosses, the owners prior to the appellants, bought the property. The evidence presented by the appellees includes affidavits from farmers and other neighbors who say "as long as I can remember" many people have used Deer Road to access the leasehold improvements at the top of Deer Road. But at least since 1957 the same road was also being used by the owner of the property. The Rosses' simultaneous use of the road from 1957 through 2003 may undermine the exclusive use element necessary to establish a public prescriptive easement unless a public prescriptive easement was established well before 1957. The record is not clear whether the appellees or the various public users ever had exclusive use of Deer Road or whether, or when, a public prescriptive easement existed prior to 1957 and through 2003.

PERMISSIVE USE

The district court also failed to consider whether Jason had successfully rebutted the presumption of adverse possession with evidence of permissive use when he became owner of record. Between September 2003 and August 2015, the appellees had been using Deer Road either in conjunction with the appellants or with their permission, and at no time during this period was the use "adverse." Permissive use of property can never ripen into title by adverse possession. See *Wanha v. Long*, 255 Neb. 849, 587 N.W.2d 531 (1998). The rule in Nebraska has been and continues to be that use of "unenclosed" or "wilderness" land is presumed to be a neighborly act and thereby a "permissive use" since a large land owner may not notice a person crossing his land and would not have an opportunity to protect his interest. *Fischer v. Grinsbergs*, 198 Neb. 329, 339, 252 N.W.2d 619, 625 (1977). But even in an urban setting, when the owner of a property has opened or maintained a right of way for his own use and the claimant's use appears to be in common with that use, the presumption arises that the use is permissive. *Feloney v. Baye*, 283 Neb. 972, 815 N.W.2d 160 (2012). The foundation for the presumption of permissive use in either situation is the likelihood that the owner is being neighborly as opposed to acquiescing in a tortious trespass over his land.

The evidence is clear in this case that Jason permitted the Starners' use of Deer Road because the Starners had been good neighbors to him and his family. The record is also clear that Jason permitted the appellees continued use of Deer Road while Jason tried to work out a maintenance arrangement with the UPRR. What is not clear is whether a public prescriptive easement had already been established prior to Jason's purchase of the property, either during the Rosses' ownership or before, such that Jason's acquiescence in Donald's use was irrelevant.

CONCLUSION

For the foregoing reasons, we reverse the district court's order and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.