SHIBLEY *v*. HAYES.

4-8622 215 S. W. 2d 141

Opinion delivered November 22, 1948.

Rehearing denied December 20, 1948.

*Oscar Fendler, Marcus Evrard* and *Frank C. Douglas,* for appellant.

*Van Hayes* and *Claude F. Cooper,* for appellee.

MINOR W. MILLWEE, Justice. Appellee, Mary Hayes, and appellant, A. G. Shibley, are owners of adjacent lots in block 21 of Blythe Addition to the City of Blytheville, Arkansas. The north half of said block contains lots 1 to 7 which are 50 feet wide and 140 feet long fronting on Ash Street. Appellee rented and occupied a house located on lot 3 from 1931 until June 29, 1938, when she entered into a contract to purchase the property. She paid the purchase price before expiration of the period provided in the contract and received her deed April 19, 1945.

Appellant purchased lots 1 and 2 of said block 21 in September, 1945. These lots were formerly owned by W. D. Gravette who died in January, 1932. The Gravette home was located on lot 1 while lot 2, which adjoins appellee's lot on the east is vacant. The Gravette home has been rented to various tenants since 1933.

Appellee's daughter owns and resides on lot 4 which adjoins appellee's lot on the west. Business houses are located on lots 5, 6 and 7 and the entire north half of block 21 was zoned as business property after appellee executed the contract to purchase her lot.

In July, 1938, appellee built a chicken yard and garden on the southeast corner of her lot so that the east side of her fence enclosed a strip 71 feet long off the west side of appellant's lot 2. This strip is seven feet wide on the north and three feet four inches wide on the south.

In November, 1946, appellant applied for a permit to erect a business building on his lots. The application was denied either because of a misdescription of his property in the application or on account of objections made by appellee before the city council. A second application was later approved.

Appellee instituted this suit alleging that at the time she contracted to purchase her lot the agent of the grantor pointed out to her the east line of said lot; that she constructed her garden fence on the south portion of the line pointed out to her; that she also kept her lawn mowed up to a line running from the northeast corner of her garden fence to the north end of the lot; that she had been in adverse possession of the strip for nine years and that appellant was trespassing on her lot and threatening to remove her fence and take unlawful possession of her property. She prayed that appellant be permanently restrained from moving her fence or otherwise disturbing her possession and that the east boundary of her lot be established on a line marked by a continuation of the east line of the garden fence to the north lot line.

In his answer appellant denied the allegations of the complaint and asserted that prior to the filing of her suit

appellee recognized and admitted that the true boundary line between the lots was located as claimed by appellant and that the latter, in reliance thereon, had spent a substantial sum of money preparing for construction of a building on his lots; and that appellee should be estopped to claim ownership of the strip of land in controversy.

The chancellor determined the issues in favor of appellee and found that she had acquired title by adverse possession to that part of lot 2 enclosed by her garden fence and also a strip of said lot 69 feet long and seven feet wide with its east boundary running from the northeast corner of the garden fence north to the north lot line.

For reversal of the decree it is earnestly insisted that the trial court's finding that appellee acquired title to the disputed strip by adverse possession is against the preponderance of the evidence. Appellant argues that the chancellor treated mere possession as sufficient to vest title in appellee, without regard to intent, and that the weight of the evidence shows that she only intended to claim title up to the boundary line as described in her deed. It was also suggested in the oral argument that a woman of appellee's integrity could not have entertained the intent essential to constitute hostile possession in view of her testimony that she had no desire to appropriate another's property and only wanted what belonged to her.

The applicable rule of law is set forth in many decisions rendered before and since the case of *Goodwin* v. *Garibaldi,* 83 Ark. 74, 102 S. W. 706, where the court said: "When a landowner, through mistake as to his boundary line, takes possession of land of an adjacent owner intending to claim only to the true boundary, such possession is not adverse, and, though continued for the statutory period, does not divest title; but when he takes possession of the land under the belief that he owns it, incloses it and holds it continuously for the statutory period under claim of ownership without any recognition of the possible right of another thereto on account of mistake in the boundary line, such possession and holding is adverse, and, when continued for the statutory period,

will divest the title of the former owner who has been thus excluded from possession."

The rule was similarly stated in the headnote to the earlier case of *Wilson* v. *Hunter,* 59 Ark. 626, 28 S. W. 419, 43 Am. St. Rep. 63, as follows: "Where one of two coterminous proprietors by mistake builds upon or encloses land of the other, intending to claim adversely merely to the real boundary line, his possession is not adverse to the other; but if his possession was acquired and held under the claim that the land was his own, his possession is adverse to the other, even though the claim of title was the result of a mistake as to the boundary."

In applying the above rule to the facts in the case at bar, we first consider that part of the decree which vests title in appellee to that portion of the disputed strip enclosed by the fence. Several witnesses corroborated the testimony of appellee to the effect that she had the garden fence constructed in July, 1938, and maintained open and exclusive possession of the enclosure under claim of ownership for more than nine years. Appellee had rented the property for seven years prior to 1938 through J. N. Thomas, local agent of the owner. Appellee testified that when she contracted to purchase her lot in June, 1938, Mr. Thomas, as agent of the vendor, pointed out and marked the east boundary line of the property by placing stobs at each end of the lot; and that about two weeks later she built her garden fence on the south end of this line where it has since remained. Appellee's daughter, who owned and resided on lot 4, testified that she was present when Thomas pointed out the lot line and corroborated the testimony of her mother.

Much of the testimony of appellee was directed to the intent with which she held possession of the disputed strip. Typical of her testimony throughout on this issue is that first given on cross-examination, as follows: "Q. How much property do you own, Mrs. Hays? Under these two conveyances? How many feet wide? A. There is supposed to be 50 feet one way and 140 feet the other. Q. Are you relying on that, or are you claiming to own more than 50 feet? A. I am claiming to own just what is mine, what Mr. Thomas told me was mine. Q. Did he tell

you, you had more than 50 feet? A. He just told me where my line was, and that is what I am claiming. Q. You have claimed that, I believe you have said, all the time you have lived there? A. Since I bought the place."

While she later testified that she had no desire to beat anybody out of anything, she also stated that she believed the line was located as indicated by Thomas and that she erected the fence and maintained the exclusive possession under claim of absolute ownership which she exercised for more than nine years.

Appellant offered no direct evidence to contradict the positive testimony of appellee and her witnesses to the effect that the fence had been maintained at the same place for more than nine years. Several of appellant's witnesses who had recently inspected the fence estimated that the kind of posts used would ordinarily last from three to five years; and that the wire appeared to be two or three years old. Appellee testified that some of the posts had been replaced two or three years before the trial and that the wire had been patched.

Appellant testified that he made no inspection or observation of the lot lines at the time of his purchase in September, 1945; that in November, 1946, his application for a building permit was resisted by appellee and shortly thereafter he approached appellee who claimed the east boundary of the fence as her line; that he then made measurements and found that the fence extended over on his lot 2 and so advised appellee, who suggested that the property be surveyed. The effect of his testimony is that Mrs. Hayes later acquiesced in the survey which was made and asked appellant to leave the fence in place until April so that she might harvest some strawberries growing in the enclosure. This testimony was disputed by appellee who denied that she ever suggested a survey or agreed that the surveyed line represented the true boundary, and stated that she declined to talk with appellant about the matter when he approached her on the streets of Blytheville several times. J. N. Thomas has resided in Kentucky for the past several years and denied, on interrogatories, that he pointed out the east lot line to appellee in 1938.

In the case of *Couch* v. *Adams,* 111 Ark. 604; 164 S. W. 728, the agent of Couch's grantor pointed out and staked off the boundaries of the lot which Couch enclosed with a fence and held for the statutory period under claim of ownership. The trial court refused to submit to the jury the question of adverse possession and gave an instructed verdict in favor of Adams. In reversing the case this court quoted with approval from *Bayles* v. *Daugherty,* 77 Ark. 201, 91 S. W. 304, where the case was reversed because of certain instructions given by the trial court and it was said: "The jury might have understood, and doubtless did understand, that if defendant's grantor, at the time he took possession of the disputed strip of land, labored under a mistake as to the true boundary, and had no intention of taking that which was not his own, the plea of adverse possession could not be sustained, even though he intended to hold the strip as his own. This is not the law. The question of the good or bad faith of the transaction, or the intention of the party taking possession of land, is not material, provided the intention is to take and hold possession adversely. If the intention is to hold adversely, the statute runs, regardless of any mistake as to boundary or title. If the holding be not hostile, but in subordination to the rights of the true owner whenever asserted, recognizing the possibility of a mistake, then the statute does not run, because the holding under those circumstances is not adverse."

There was a second appeal of the Couch case reported in 121 Ark. 230, 180 S. W. 498. It was there held that the trial court erred in not directing a verdict for Couch where the undisputed evidence showed that he enclosed the tract with a fence built on lines marked by his vendor's agent and held possession under claim of ownership for the statutory period. This conclusion was reached although Couch testified on cross-examination as follows: "Q. Did you have in mind at any time to take more property than you bought and to convert it to your own use? A. No, sir; I didn't want nothing only what I had bought."

While the statements of appellee made after the running of the statutory period were admissible to show the

character of her possession during that period, her recognition of another's title, if then made, would not divest a title that had already vested in her by adverse possession. *Shirey* v. *Whitlow*, 80 Ark. 444, 97 S. W. 444; *Butler* v. *Hines*, 101 Ark. 409, 142 S. W. 509. Nor do we infer from appellee's entire testimony that she disclaimed her right to any property not described in her deed, as was found to be the case in the testimony of the adverse claimant in *Murdock* v. *Stillman*, 72 Ark. 498, 82 S. W. 834, upon which appellant relies.

Appellant also relies on the case of *Waters* v. *Madden*, 197 Ark. 380, 122 S. W. 2d 554, in which Waters' claim of title was dependent on the adverse possession of his grantor who built the fence and testified that he claimed only the acreage called for in his deed. The preponderance of the evidence in that case also showed that Waters agreed that the fence might be replaced on the true line. In *Martin* v. *Winston*, 209 Ark. 464, 190 S. W. 2d 962, also relied on by appellant, Winston, who claimed title to a driveway by adverse possession, relied on the prior possession of his grantor who testified that he did not intend to sell Winston anything not embraced within the boundaries of the lot described in his deed. It was also held in that case that the preponderance of the evidence failed to show that Winston claimed the disputed property irrespective of the location of the true line.

We conclude that the preponderance of the evidence supports the chancellor's finding that appellee acquired title by adverse possession to that portion of the disputed strip enclosed by the garden fence.

As to that portion of the strip which is marked by a line extending from the northeast corner of the fence to the front of the lot, we reach a different conclusion. There was no fence or other sufficiently defined division line separating the two lots on this part of the disputed boundary. The only substantial testimony tending to establish appellee's claim of adverse possession to that portion of the disputed strip is that she kept the lawn mowed in line with the fence; and that tenants residing on appellant's lot 1 sometimes mowed to the same line.

In *DeMers* v. *Graupner,* 186 Ark. 214, 53 S. W. 2d 8, it was held (headnote 2) : ''Evidence showing that an adjoining landowner mowed the grass on a small strip adjoining defendant's fence *held* insufficient to establish adverse possession where there was nothing to bring home to defendant the knowledge that plaintiff was intending to divest defendant of title by adverse occupancy.'' See, also, *Terral* v. *Brooks,* 194 Ark. 311, 108 S. W. 2d 489; *Bellamy* v. *Shryock,* 211 Ark. 116, 199 S. W. 2d 580. According to the testimony of appellee, she mowed her yard after she bought the lot just as she did when she rented it. The mowing over the line appears to have been permissive from the beginning and the mere holding thereafter by mowing was insufficient to amount to constructive notice to the true owner that the possession was hostile.

That part of the decree vesting title in appellee to the property enclosed by her fence is affirmed. So much of the decree as vests title to the balance of the disputed strip in appellee is reversed and the cause remanded with directions to dismiss her complaint as to such portion.

The costs of this appeal will be shared equally by the parties.