S11A1260. BAILEY v. MOTEN.
(717 SE2d 205)

HINES, Justice.

In this quiet title action, Josephine Bailey ("Bailey") appeals the order of the superior court adopting the report of a Special Master and decreeing that fee simple title to a parcel of land in Coweta County is vested in Derether Moten. For the reasons that follow, we affirm.

Bailey owns a house and lot in the City of Newnan to which she has record title. The property that is the subject of this quiet title action is located adjacent to and behind Bailey's house and lot. The subject property is also adjacent to a house and lot to which Moten holds record title. Bailey's petition to quiet title under OCGA § 23-3-60 et seq., asserted that she owned the subject property by deed, and alternatively, by prescription. "In an action to quiet title brought under OCGA § 23-3-60 et seq., the findings of the Special Master and adopted by the trial court will be upheld unless clearly erroneous. Therefore, if there is any evidence supporting the judgment of the trial court, it will not be disturbed." *Cernonok v. Kane*, 280 Ga. 272, 273 (1) (627 SE2d 14) (2006) (Citations and punctuation omitted.)

1. Bailey's claim of ownership by deed is based upon a warranty deed dated December 17, 1974, from grantor Richard Beardon to grantee Matthew Bailey, who was her husband.[1] But, this deed sets forth a metes and bounds description that corresponds to Bailey's

---

[1] After Matthew Bailey died, his children in 1992 executed a quitclaim deed to the Bailey home property, conveying it to Josephine Bailey, using the same metes and bounds description and plat reference as in the 1974 deed to Matthew Bailey.

house and surrounding lot only; the description does not include the subject property. The deed also recites that the land conveyed "is more particularly identified by plat of property . . . dated December 12, 1974, of record in Plat Book 19, Page 103 . . . ." The referenced plat depicts a tract corresponding to the metes and bounds description; the plat designates the property containing Bailey's house by solid lines and does not include the subject property therein. The plat also carries the notation that it is a portion of property recorded on an earlier plat.

Thus, by its express description, the deed upon which Bailey relies did not convey an interest in the subject property. See *Hardy v. Brannen*, 194 Ga. 252 (21 SE2d 417) (1942). Nor is there any inconsistency between the metes and bounds description and the referenced plat;[2] both clearly described property other than the disputed land. Id. Compare *Williams Bros. Lumber Co. v. Massey*, 179 Ga. 508 (1) (176 SE 378) (1934). Accordingly, the judgment of the trial court that Bailey did not have title to the property by virtue of a deed was not error.

2. Bailey also claims prescriptive title to the subject property by possession for a period of more than 20 years[3] under OCGA § 44-5-163.[4] "To establish title by adverse possession . . . a party must show possession not originated in fraud that is public, continuous, exclusive, uninterrupted and peaceable, and accompanied by a claim of right. OCGA § 44-5-161 (a)."[5] *Cooley v. McRae*, 275 Ga. 435, 436

---

[2] Bailey contends that a plat different from that appearing at Plat Book 19, Page 103 was prepared for the 1974 deed, and encompassed the subject property in the grant to Matthew Bailey, but there is no indication that such was ever recorded. Rather, the record is clear; the 1974 deed's metes and bounds description includes only the Bailey residence property, and not the subject property, and the plat referenced in the deed similarly delineates the land conveyed as separate from the subject parcel.

[3] Bailey also asserts that the seven-year period of prescription set forth in OCGA § 44-5-164 applies, on the theory that she had color of title to the subject property in the 1974 deed to Matthew Bailey. But, as noted above, see Division 1, supra, the 1974 deed does not describe the subject property, and thus cannot serve as color of title to it. *Luttrell v. Whitehead*, 121 Ga. 699, 701-702 (1) (49 SE 691) (1905); *Williamson v. Tison*, 99 Ga. 791 (1) (26 SE 766) (1896).

[4] OCGA § 44-5-163 reads:
   Possession of real property in conformance with the requirements of Code Section 44-5-161 for a period of 20 years shall confer good title by prescription to the property against everyone except the state and those persons laboring under the disabilities stated in Code Section 44-5-170.

[5] OCGA § 44-5-161 (a) reads:
   (a) In order for possession to be the foundation of prescriptive title, it:
      (1) Must be in the right of the possessor and not of another;
      (2) Must not have originated in fraud except as provided in Code Section 44-5-162;
      (3) Must be public, continuous, exclusive, uninterrupted, and peaceable; and
      (4) Must be accompanied by a claim of right.

(569 SE2d 845) (2002). "Prescriptive rights are to be strictly construed, and the prescriber must give some notice, actual or constructive, to the landowner he or she intends to prescribe against." *MEA Family Investments, LP v. Adams*, 284 Ga. 407, 408 (667 SE2d 609) (2008) (Citation and punctuation omitted.). "Actual possession of lands may be evidenced by enclosure, cultivation, or any use and occupation of the lands which is so notorious as to attract the attention of every adverse claimant and so exclusive as to prevent actual occupation by another." OCGA § 44-5-165.

Neither Bailey nor her husband cultivated the property or erected any structure or fence upon it. See *Double "D" Bar "C" Ranch v. Bell*, 283 Ga. 386, 387 (2) (658 SE2d 635) (2008). Compare *Walker v. Sapelo Island Heritage Auth.*, 285 Ga. 194, 197-198 (2) (674 SE2d 925) (2009). The Special Master noted that Bailey had periodically mowed the property, but

> mow[ing] and occasionally clean[ing] up the area . . . is not generally sufficient to constitute actual possession, much less to require such conclusion as a matter of law. [Cit.] Because the lot in question adjoins [Bailey's] property, other claimants could have interpreted such mowing and occasional clean-up as having a merely aesthetic objective and not as an intent to exercise dominion.

*Friendship Bapt. Church v. West*, 265 Ga. 745, 746 (462 SE2d 618) (1995). The Special Master also found that Bailey had periodically used the property for family gatherings, but occasional visits are not sufficient to establish possession. See *Robertson v. Abernathy*, 192 Ga. 694, 699 (4) (16 SE2d 584) (1941). There was evidence that in 1974 or 1975, Bailey and her husband caused the subject property to be cleared of wild vegetation. However, "[t]imber cutting as evidence of possession has been held to be of little value," *Cheek v. Wainwright*, 246 Ga. 171, 172 (1) (269 SE2d 443) (1980), there is no "stamp of approval upon mere cutting of trees as evidence of actual possession," id. at 173, and the clearing of vegetation does not require a finding that possession has been established.

Bailey contends that a pre-existing fence situated at one end of the subject property, together with the vegetation lines caused by the clearing and periodic mowing of the property, constituted an enclosure of the property so as to evidence possession. OCGA § 44-5-165; *McCrea v. Ga. Power Co.*, 179 Ga. 1 (174 SE 798) (1934). Whether the property was enclosed was an issue for the trier of fact, see *Brookman v. Rennolds*, 148 Ga. 721, 731-732 (10) (98 SE 543) (1919), and the photographs submitted in support of this claim could allow the Special Master to conclude that the asserted enclosure was not

"so notorious as to attract the attention of every adverse claimant and so exclusive as to prevent actual occupation by another." OCGA § 44-5-165. As there was some evidence supporting the trial court's judgment, it did not err in adopting the report of the Special Master and denying Bailey's claim of adverse possession. *Cernonok*, supra.

3. The Special Master concluded that, by virtue of a 2001 quitclaim deed, title to the subject property was vested in Moten in fee simple, which was included in the trial court's final judgment. Bailey contends that this was error, asserting that Moten's chain of title is incomplete, as it arises from a 1979 deed in which the grantor was the "Fulton National Bank of Atlanta as Trustee under Jay Properties Trust." While a 1966 deed was executed conveying the property to the "Fulton National Bank of Atlanta, executor Jay C. Smith, Sr. Estate," Bailey asserts there is no record after that deed of the property being conveyed to "Fulton National Bank of Atlanta as Trustee under Jay Properties Trust." However, under the quiet title procedure, the Special Master is empowered "to ascertain and determine the validity, nature, or extent of petitioner's title and *all other interests* in the land, or any part thereof, which may be adverse to the title claimed by the petitioner . . . ." OCGA § 23-3-66. (Emphasis supplied.) See *MPP Investments, Inc. v. Cherokee Bank, N.A.*, 288 Ga. 558, 560-561 (1) (707 SE2d 485) (2011). Moten's quitclaim deed was the only deed placed before the Special Master that described an interest in the subject property, and it was not error for the trial court to adopt the Special Master's conclusion that title was vested in Moten.[6]

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 17, 2011.

*Holland & Knight, Vernon M. Strickland*, for appellant.
*Harwell, Brown & Harwell, Ronald H. Harwell, Orville Shepherd, Graylin C. Ward*, for appellee.

---

[6] Bailey also enumerates as error the trial court's acceptance of the Special Master's conclusion that Bailey's "[p]redecessor in title . . . never took title to the subject property." Assuming that the Special Master's reference is to Beardon, rather than to Matthew Bailey or his children who executed the quitclaim deed by which Bailey claims title to her house and lot, the deed by which Beardon was conveyed the Bailey home property contained a metes and bounds description that corresponded only to Bailey's house and lot. In any event, any conclusion on the part of the Special Master regarding the full extent of Beardon's holding is of no moment; the deed from Beardon to Matthew Bailey in no way purports to convey anything beyond that specifically granted by the metes and bounds description and the referenced plat, i.e., the Bailey house and lot.