Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/26/2019 09:06 AM CDT

Ray Siedlik and Terri Siedlik, appellants, v.
Daniel Nissen and Deb Nissen, appellees.

___ N.W.2d ___

Filed July 26, 2019.    No. S-18-899.

1. **Equity: Quiet Title.** A quiet title action sounds in equity.
2. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.
3. **Equity: Evidence: Appeal and Error.** In an appeal of an equity action, where credible evidence is in conflict on a material question of fact, an appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and their manner of testifying, and accepted one version of the facts rather than another.
4. **Adverse Possession: Appeal and Error.** In an action to establish title by adverse possession, an appellate court may give consideration to the fact that the trial court personally viewed the premises involved therein.
5. **Adverse Possession: Proof: Time.** A party claiming title through adverse possession must prove by a preponderance of the evidence that the adverse possessor has been in (1) actual, (2) continuous, (3) exclusive, (4) notorious, and (5) adverse possession under a claim of ownership for a statutory period of 10 years.
6. **Adverse Possession: Notice.** The acts of dominion over land allegedly adversely possessed must, to be effective against the true owner, be so open, notorious, and hostile as to put an ordinarily prudent person on notice of the fact that the lands are in the adverse possession of another.
7. ____: ____. The purpose of prescribing the manner in which an adverse holding will be manifested is to give notice to the real owner that his or her title or ownership is in danger so that he or she may, within the period of limitations, take action to protect his or her interest. It is the nature of the hostile possession that constitutes the warning, not the intent of the claimant when he or she takes possession.

8. ____: ____. Something more than a neighbor's watering and mowing over the property line is needed to alert a reasonable owner that his or her title is in danger and he or she must take steps to protect his or her interest.

9. **Adverse Possession: Boundaries.** Proof of the adverse nature of the possession of land is not sufficient to quiet title in the adverse possessor; the land itself must also be described with enough particularity to enable the court to exact the extent of the land adversely possessed and to enter a judgment upon the description.

10. **Adverse Possession: Proof.** A claimant of title by adverse possession must show the extent of his or her possession, the exact property which was the subject of the claim of ownership, that his or her entry covered the land up to the line of his or her claim, and that he or she occupied adversely a definite area sufficiently described to found a verdict upon the description.

11. **Appeal and Error.** An appellate court will not consider an issue on appeal that was not passed upon by the trial court.

Appeal from the District Court for Cass County: MICHAEL A. SMITH, Judge. Affirmed.

Douglas W. Ruge for appellants.

Joel M. Carney and William J. Hale, of Goosmann Law Firm, P.L.C., for appellees.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FUNKE, J.

This is an action brought by Ray Siedlik and Terri Siedlik to quiet title to a tract of land located in Cass County, Nebraska. The Siedliks claimed title by adverse possession to a 6-foot tract owned by abutting landowners Daniel Nissen and Deb Nissen. The district court found in favor of the Nissens, and the Siedliks appealed. We affirm.

## I. BACKGROUND

In December 2004, the Siedliks moved into a newly constructed home located on "Lot 3, Block 7, Buccaneer Bay" (Lot 3), in Cass County, Nebraska. Lot 3 is bordered on the

west by "Lot 4, Block 7, Buccaneer Bay" (Lot 4). Lot 4 is a vacant lot owned by the Nissens, who have occupied a residence on the lot directly west of Lot 4 since 2001. Daniel testified that after the Siedliks moved in, Ray offered to purchase Lot 4 or a portion thereof, but Daniel had no plans to sell.

In April 2005, the Siedliks installed improvements over the property line, which included two sprinkler heads, a sprinkler control box, landscaping, and a wooden fence. The front sprinkler head was placed 5½ feet into Lot 4, which marked the furthest encroachment. The sprinkler heads were intended to line up with a stake located in the rear west corner of the Siedliks' property, but were mistakenly placed beyond the boundary line due to the curvature of Buccaneer Boulevard. The Siedliks placed the front sprinkler head in their front yard about 5 feet south of Buccaneer Boulevard, which they thought was the northwest corner of their property. The second sprinkler head was placed about halfway down the yard, 3 feet into Lot 4. The Siedliks graded and laid sod and erected a wooden fence down the same line, known as the sprinkler line. The disputed area is pie shaped with the widest point at the front of the lot and the end point located at the rear stake traveling along the sprinkler line.

The Nissens took photographs while the Siedliks installed these improvements, were aware of the grading and laying of sod, and witnessed the sprinklers water the sodded area. Daniel testified that when Terri was working in the yard in 2006 or 2007, she represented that the Siedliks would never encroach. Both the Siedliks and the Nissens believed that the improvements were built on the Siedliks' property, but a 2016 survey conducted by the Nissens revealed the true property line and the Siedliks' encroachments. Around this same time, the Siedliks voluntarily moved their fence and sprinkler heads closer to their house.

The parties began negotiating an agreement to extend the Siedliks' land 2 feet into Lot 4 for nearly the full length of the property line. The potential land sale was for a total of 230

square feet. The Siedliks conducted a survey which confirmed the true property line and included the following legal description for the proposed property acquisition:

PART OF LOT 4, BLOCK 7, BUCCANEER BAY, CASS COUNTY, NEBRASKA[,] BEGINNING AT THE NORTHEAST CORNER OF LOT 4, BLOCK 7, BUCCANEER BAY; THENCE N 89°53′35″ E (ASSUMED BEARING), 2.00 FEET ALONG THE NORTH LINE OF SAID LOT 4, BLOCK 7, BUCCANEER BAY; THENCE S 00°06′25″ E, 80.00 FEET; THENCE S 01°44′36″ E, 70.03 FEET TO THE SOUTHEAST CORNER OF SAID LOT 4, BLOCK 7, BUCCANEER BAY; THENCE N 00°06′25″ W, 150.00 FEET TO THE POINT OF BEGINNING. DESCRIBED TRACT CONTAINS 230 SQUARE FEET.

On December 29, 2016, the Siedliks filed an amended complaint seeking to quiet title in a 6-foot tract of land in Lot 4. The Siedliks alleged that for a period of approximately 12 years, their fence, retaining wall, and rock area encroached onto the Nissens' property. The Siedliks alleged that during this time period, they continuously and exclusively maintained, mowed, and utilized an area of land 6 feet beyond the boundary line. The Siedliks attached to the amended complaint "Exhibit 'A,'" which contained the same survey property depiction as exhibit 12, shown on page 788.

In their prayer for relief, they requested an "[o]rder quieting legal title in the 230 square feet of property referenced in 'Exhibit A.'" In addition, the Siedliks requested that the court quiet title in "an area up to six feet into the [Nissens'] property."

The Nissens filed an answer denying the allegations and affirmatively alleging that the Siedliks' possession of the property was not under a claim of ownership. The Siedliks moved for summary judgment, which the court overruled. The court inspected the property in the presence of the parties' attorneys and held a trial on July 25, 2018.



At trial, Ray testified that he exclusively used and maintained the land inside the sprinkler line. He testified that he mowed and replaced sod in this area and that the opposite side of the sprinkler line was overgrown with longer grass and tall weeds, which meant that the sprinkler line was also referred to as the "weed line." The Siedliks offered overhead photographs taken in August 2005 and October 2006 which demonstrated the weed line.

Daniel testified that the Siedliks' use of the disputed area within the relevant time period was not always exclusive. He

testified that he also mowed the area, up to about 6 inches from the fence, until 2008 when the parties had a dispute. Thereafter, the parties recognized an "imaginary line" and Daniel then mowed up to the sprinkler line. Ray disputed this testimony by stating that Daniel mowed up to the sprinkler line until 2008 and let the weeds grow thereafter. He stated that he and Daniel mowed at different heights and that when Daniel mowed he mowed the grass down to the dirt.

Ray testified at length about his desire to maintain control over the disputed area in order to prevent flooding issues to his home. In 2012 or 2013, the Siedliks experienced flooding in their basement because Lot 3 sat lower than Lot 4. As a result, the Siedliks installed in the disputed area portions of a lower retaining wall and a drainage system.

In 2016, around the time of the Nissens' survey, the Siedliks replaced their wooden fence with a vinyl fence that did not encroach. There was conflicting evidence as to whether one or both of the sprinkler heads still encroached after they were moved back. The sprinkler control box, grading and sod, and lower retaining wall remained over the property line.

At the close of the evidence, the Siedliks moved to conform the pleadings to the evidence adduced at trial. Their counsel stated that the motion was intended to address a potential discrepancy between the amount of land claimed in paragraphs 6 and 7 in the amended complaint and the evidence at trial. Counsel for the Siedliks specifically asked that the court reform paragraph 7 to be consistent with paragraph 6. Both paragraphs claimed a 6-foot tract of land, but paragraph 7 also claimed the "land depicted in 'Exhibit A,'" which claimed only a 2-foot tract, and the most that Ray claimed in his testimony was a 5½-foot tract. The court granted the motion and amended the pleading "to comply with the proof as received."

Following trial, the court entered an order of dismissal. The court relied on *Poullos v. Pine Crest Homes*[1] for the rule

---

[1] *Poullos v. Pine Crest Homes*, 293 Neb. 115, 876 N.W.2d 356 (2016).

that mere maintenance of land, such as mowing or landscaping, does not constitute sufficiently hostile possession to put a landowner on notice of adverse possession. The court found the evidence showed that the Siedliks had not used the land in a manner different from general maintenance. The court found that the fence and at least one of the sprinkler heads no longer encroached and that the remaining items which had been in place for longer than 10 years, such as the sprinkler control box and landscaping, encroached by less than 2 feet. The court found these intrusions were not sufficiently notorious to sustain a claim to quiet title by adverse possession. We moved the appeal to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts of this State.[2]

## II. ASSIGNMENTS OF ERROR

The Siedliks assign that the district court erred in finding (1) insufficient notorious use of the disputed land to sustain a claim for adverse possession and (2) insufficient notorious use of the disputed land to sustain a claim for the boundary line by acquiescence.

## III. STANDARD OF REVIEW

[1,2] A quiet title action sounds in equity.[3] On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.[4]

[3,4] In an appeal of an equity action, where credible evidence is in conflict on a material question of fact, an appellate court considers and may give weight to the fact that the trial

---

[2] See Neb. Rev. Stat. § 24-1106 (Cum. Supp. 2018).

[3] *Brown v. Jacobsen Land & Cattle Co.*, 302 Neb. 538, 924 N.W.2d 65 (2019); *Poullos, supra* note 1; *Wanha v. Long*, 255 Neb. 849, 587 N.W.2d 531 (1998).

[4] *Id*.

court heard and observed the witnesses and their manner of testifying, and accepted one version of the facts rather than another.[5] We may also give consideration to the fact the trial court personally viewed the premises involved therein.[6]

## IV. ANALYSIS

### 1. Adverse Possession

[5] The Siedliks sought to quiet title under the theory of adverse possession. A party claiming title through adverse possession must prove by a preponderance of the evidence that the adverse possessor has been in (1) actual, (2) continuous, (3) exclusive, (4) notorious, and (5) adverse possession under a claim of ownership for a statutory period of 10 years.[7] The Siedliks argue on appeal that the district court erred in finding their encroachments were not sufficiently notorious. Upon de novo review, we conclude that regardless of the errors assigned by the Siedliks, the district court correctly dismissed the Siedliks' amended complaint due to the Siedliks' failure to prove all of the elements of adverse possession.

[6] The acts of dominion over land allegedly adversely possessed must, to be effective against the true owner, be so open, notorious, and hostile as to put an ordinarily prudent person on notice of the fact that the lands are in the adverse possession of another.[8] If an occupier's physical actions on the land constitute visible and conspicuous evidence of possession and use of the land, that will generally be sufficient to establish that possession was notorious.[9] Although the enclosure of land renders

---

[5] See, *Steinfeldt v. Klusmire*, 218 Neb. 736, 359 N.W.2d 81 (1984); *Shirk v. Schmunk*, 192 Neb. 25, 218 N.W.2d 433 (1974). See, also, *Fredericks Peebles v. Assam*, 300 Neb. 670, 915 N.W.2d 770 (2018).

[6] *Shirk, supra* note 5. See, *Grint v. Hart*, 216 Neb. 406, 343 N.W.2d 921 (1984); *Barry v. Wittmersehouse*, 212 Neb. 909, 327 N.W.2d 33 (1982).

[7] *Poullos, supra* note 1.

[8] *Id.*

[9] *Id.*

the possession of land open and notorious, and tends to show that it is exclusive, it is not the only way by which possession may be rendered open and notorious.[10] Nonenclosing improvements to land, such as erecting buildings or planting groves or trees, which show an intention to appropriate the land to some useful purpose, are sufficient.[11]

In this matter, the evidence showed that the amount of land claimed by the Siedliks varied at different places along the boundary line. The angling of the disputed area meant that the amount of land claimed decreased when moving from the front yard toward the backyard.

### (a) Front Yard

In the front yard, which runs from the street to the approximate front of the house, the Siedliks claimed 5½ feet of land due to the placement of the front sprinkler head and the maintaining of the grass in the area. The evidence does support the Siedliks' contention that they maintained the lawn in this area. However, the evidence also indicates that other than the sprinkler head, no structures or improvements were located within this 5½ feet.

[7] It is the Siedliks' burden to establish all of the elements of adverse possession by a preponderance of the evidence. With respect to the front lawn, there was a failure of proof regarding the element of adverse possession under a claim of ownership. Claim of ownership means a possession that is hostile, meaning that an occupant holds and is in possession of land as the owner and against all other claimants.[12] The purpose of prescribing the manner in which an adverse holding will be manifested is to give notice to the real owner that his or her title or ownership is in danger so that he or she may, within the period of limitations, take action to protect his or

---

[10] *Id.*

[11] *Id.*

[12] See, *Brown, supra* note 3; *Wanha, supra* note 3.

her interest. It is the nature of the hostile possession that constitutes the warning, not the intent of the claimant when he or she takes possession.[13]

[8] With respect to the Siedliks' maintenance of the yard, the evidence does not suggest that their possession was hostile in nature, or something more than maintaining the aesthetics of the area. In considering the nature of the possession, we note that Terri announced that the Siedliks would not encroach. The Siedliks did not erect any structures in the area or appropriate the land for some useful purpose. We have previously held that acts of routine yard maintenance, without more, are insufficient to warn the titleholder that another is claiming or using the land for his own purpose.[14] Something more than a neighbor's watering and mowing over the property line is needed to alert a reasonable owner that his or her title is in danger and he or she must take steps to protect his interest.[15] Additionally, courts from other jurisdictions have held that mere maintenance of land, such as mowing the grass, cutting the weeds, planting flowers, and minor landscaping, does not constitute a hostile character of possession sufficient to give notice of an exclusive adverse possession.[16]

Upon de novo review, we find the Siedliks have failed to prove, by a preponderance of the evidence, the necessary elements to support a claim of adverse possession of the land located adjacent to the front yard.

### (b) Middle Yard

Near the middle of the yard, which runs from approximately the front of the house to the back of the house, the Siedliks

---

[13] *Id.*

[14] *Poullos, supra* note 1.

[15] *Id.*

[16] See, *Shibley v. Hayes*, 214 Ark. 199, 215 S.W.2d 141 (1948); *Bailey v. Moten*, 289 Ga. 897, 717 S.E.2d 205 (2011); *Crown Credit Co., Ltd. v. Bushman*, 170 Ohio App. 3d 807, 869 N.E.2d 83 (2007); *Montieth v. Church*, 68 Ohio App. 2d 219, 428 N.E.2d 870 (1980).

claimed 3 feet of land due to the placement of a second sprinkler head, a sprinkler control box, a lower retaining wall, and landscaping. In light of the district court's findings, as well as our review of the evidence, we find the record indicates that these improvements encroached by less than 1 foot into the disputed area.

Of importance, the evidence concerning a tract of land 2 feet in width referred only to a term used in negotiations and not as a measure of the land under a claim of ownership. The parties included a legal description for the proposed 2-foot tract in a draft purchase agreement, which the Siedliks signed but the Nissens declined to sign. The record does not contain a legal description for the property which the Siedliks claimed to have adversely possessed.

[9,10] We have long recognized that proof of the adverse nature of the possession of land is not sufficient to quiet title in the adverse possessor; the land itself must also be described with enough particularity to enable the court to exact the extent of the land adversely possessed and to enter a judgment upon the description.[17] A claimant of title by adverse possession must show the extent of his or her possession, the exact property which was the subject of the claim of ownership, that his or her entry covered the land up to the line of his or her claim, and that he or she occupied adversely a definite area sufficiently described to found a verdict upon the description.[18] This standard requires that the claimant provide to the trial court a precise legal description rather than general descriptions based on landmarks.[19]

---

[17] *Schellhorn v. Schmieding*, 288 Neb. 647, 851 N.W.2d 67 (2014); *Inserra v. Violi*, 267 Neb. 991, 679 N.W.2d 230 (2004); *Matzke v. Hackbart*, 224 Neb. 535, 399 N.W.2d 786 (1987).

[18] *Inserra, supra* note 17; *Pokorski v. McAdams*, 204 Neb. 725, 285 N.W.2d 824 (1979).

[19] See, *Inserra, supra* note 17; *Petsch v. Widger*, 214 Neb. 390, 335 N.W.2d 254 (1983). See, also, *Royal v. McKee*, 298 Neb. 560, 905 N.W.2d 51 (2017); *Sawtell v. Bel Fury Investments Group*, 19 Neb. App. 574, 810 N.W.2d 320 (2012).

The Siedliks failed to describe the land with enough particularity, because they did not provide a legal description for the land over which they claimed ownership. It is clear based on the evidence adduced at trial and the Siedliks' motion to amend the pleadings that the Siedliks sought to quiet title in a 5½-foot strip of land and that the only legal description in evidence pertained to a proposed acquisition of a tract of land 2 feet in width.

We have consistently rejected adverse possession claims when the burden to provide a specific land description is not met. In *Inserra v. Violi*,[20] we concluded that the claimants did not meet their burden of proving "an exact and definite description of [the] portion of [the lot] to which they claim[ed] title by adverse possession." In *Matzke v. Hackbart*,[21] we rejected a claim where the description provided was "an admitted estimation, with no factual basis expressed in the record." In *Steinfeldt v. Klusmire*,[22] we noted that the claimant's evidence "failed to establish any specific boundaries." The lack of a precise land description for a court to enter a judgment upon can create problems for future transactions involving the land.[23]

As noted, the evidence of encroachments varied along the boundary line. After personally inspecting the land at issue, the district court found that the fence and at least one of the sprinkler heads no longer encroached and that the Siedliks' encroachments were "*less than* two feet over the property line." (Emphasis supplied.) This finding is consistent with Ray's testimony that the sprinkler control box encroached by 6 inches, as well as with photographs in evidence which showed that the lower retaining wall rested directly on the property line. This evidence suggests that the legal description of the 2-foot tract

[20] *Inserra, supra* note 17, 267 Neb. at 996, 679 N.W.2d at 235.

[21] *Matzke, supra* note 17, 224 Neb. at 541, 399 N.W.2d at 791.

[22] *Steinfeldt, supra* note 5, 218 Neb. at 739, 359 N.W.2d at 83.

[23] See *Sawtell, supra* note 19.

cannot be used to support the Siedliks' quiet title claim. The varied length of the encroachments along the boundary line only reinforces the fact that the Siedliks' possession of the area was not hostile in nature. Moreover, the lower retaining wall and drainage system were located in the disputed area for less than the required 10-year period.

Upon de novo review, and according deference to the district court's findings based on its inspection of the premises, we determine that the Siedliks have failed to prove, by a preponderance of the evidence, the necessary elements to support a claim of adverse possession of the land located adjacent to the middle yard. We conclude that the Siedliks did not meet their burden to provide a specific description for the land which they sought to claim by adverse possession.

## (c) Backyard

Toward the back of the yard, which runs from the back portion of the house to the rear of the lot, the Siedliks claimed the disputed land due to the placement of a wooden fence. Where a fence has been constructed as a boundary line between the property of two landowners, one of whom claimed ownership to such fence line for the full statutory period of 10 years, and is not interrupted in his possession or control during that time, he or she will, by adverse possession, gain title to such land as may have been improperly enclosed within his or her own land.[24] However, the evidence is undisputed that the fence was not constructed as a boundary line. This court has held that where neither party considered a fence a boundary, the fence does not constitute evidence of adverse possession.[25]

The evidence indicates that a fence was erected in 2005 commencing at the back of the house and running to the southern

---

[24] *McGowan v. Neimann*, 144 Neb. 652, 14 N.W.2d 326 (1944).

[25] See *Wanha, supra* note 3, citing *Thornburg v. Haecker*, 243 Neb. 693, 502 N.W.2d 434 (1993).

end of the property line. There was testimony that the corner of the fence nearest to the house encroached about 3 feet into the Nissens' land. However, there was no evidence to establish how much the remaining portions of fence encroached upon the disputed area. Further, the evidence shows that prior to filing suit, the Siedliks removed the wooden fence and replaced it with a vinyl fence located inside their property line. As a result, the only survey received into evidence does not depict the location of the old fence, and no legal description was provided to indicate the amount of encroachment.

Additionally, the Siedliks claimed possession of the land beyond the fence up to the sprinkler line. There was evidence that until 2008, Daniel mowed beyond the sprinkler line and into the disputed area about every other week. Possession must be exclusive, and if the occupier shared possession with the title owner, the occupier may not obtain title by adverse possession.[26] Where the record establishes that both parties have used the property in dispute, there can be no exclusive possession on the part of one party for the purpose of establishing adverse possession.[27]

Upon de novo review, we find the Siedliks have failed to prove, by a preponderance of the evidence, the necessary elements to support a claim of adverse possession of the land located adjacent to the backyard.

## 2. BOUNDARY ACQUIESCENCE

[11] With respect to the Siedliks' second assignment of error, the record shows that the district court did not pass upon a claim for quiet title based on the theory of boundary acquiescence and that the Siedliks are advancing this theory for the first time on appeal. Because an appellate court will not consider an issue on appeal that was not passed upon by the

---

[26] *Wanha, supra* note 3.

[27] *Nye v. Fire Group Partnership*, 265 Neb. 438, 657 N.W.2d 220 (2003); *Wanha, supra* note 3.

trial court,[28] we do not address the Siedliks' contention that the court erred in failing to sustain a claim for the boundary line by acquiescence.

## V. CONCLUSION

Based upon the foregoing, we affirm the judgment of the district court.

Affirmed.

_____

[28] *Cullinane v. Beverly Enters. - Neb.*, 300 Neb. 210, 912 N.W.2d 774 (2018).