IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

KORTMEYER V. HENDRIX

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ALAN KORTMEYER AND CAROLYN KORTMEYER, APPELLANTS,

V.

ALYSSA HENDRIX ET AL., APPELLEES.

Filed October 14, 2025.    No. A-24-794.

Appeal from the District Court for Seward County: RACHEL A. DAUGHERTY, Judge. Affirmed.

Gina M. Elliott, of Morrow, Poppe, Watermeier & Lonowski, P.C., for appellants.

Stephen D. Mossman and Andrew R. Spader, of Mattson Ricketts Law Firm, L.L.P., for appellees.

RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

MOORE, Judge.

### INTRODUCTION

Alan and Carolyn Kortmeyer appeal from the Seward County District Court's order denying their request to quiet title to a strip of land between their property and an adjoining property owned by Carey and Alyssa Hendrix. For the reasons stated herein, we affirm.

### STATEMENT OF FACTS

This case concerns the proper boundary between Lot 27, which is owned by the Kortmeyers, and Lot 26, which is owned by the Hendrixes and their various companies (which we will refer to collectively as "the Hendrixes"). Since the purchase of their property, the Kortmeyers believed that the land approximately 7 feet west of the actual boundary line between Lots 26 and 27 was within their property. In 2021, both the Kortmeyers and the Hendrixes obtained surveys of

- 1 -

the property and learned that 7 to 7.10 feet of the western boundary of Lot 27 belonged to Lot 26. We will refer to this strip of land on Lot 26 as the "disputed area."

*Procedural History.*

On July 19, 2023, the Kortmeyers filed a complaint against the Hendrixes seeking to quiet title to the disputed area. The complaint sought a declaratory judgment that the Kortmeyers had met the necessary elements of adverse possession, as well as a permanent injunction that the Hendrixes not damage the property in the disputed area. The complaint did not contain a legal description of the disputed area but described the disputed area as "approximately 7.2 feet wide" and abutting the western boundary of the Kortmeyers' property.

That same day, the Kortmeyers filed a motion for temporary injunction seeking to refrain the Hendrixes from "destroying" the property in the disputed area. The district court subsequently granted an ex parte temporary order enjoining the Hendrixes from destroying the property marked 7.2 feet west of the Kortmeyers' property line.

A hearing was held on August 14, 2023, regarding the Kortmeyers' request for a temporary injunction. The district court subsequently entered an order denying the Kortmeyers' request for a temporary injunction.

On September 18, 2023, the Hendrixes filed an answer and counterclaim. The answer alleged the affirmative defenses of failure to state a claim, estoppel, waiver, and unclean hands. The counterclaim sought injunctive relief by alleging that the Kortmeyers had failed to comply with a conditional use permit. The counterclaim also sought to quiet title in the disputed area and sought recovery for trespass. The Hendrixes' counterclaim provided a legal description for Lot 26 in its entirety, which included the disputed area. The Kortmeyers filed a general denial.

Prior to trial, the Hendrixes moved to dismiss their claim against the Kortmeyers for trespass, which the district court granted. Following the presentation of evidence at trial, the Hendrixes moved to dismiss their claim against the Kortmeyers for the alleged violation of the conditional use permit, as well as to dismiss the defendant companies Kach 510, LLC, Kach Roberts Bldg., LLC, and Kach420M, LLC. The court dismissed the claim regarding the conditional use permit as well as the defendant companies, as no evidence had been adduced against the companies.

*Trial.*

Trial on the parties' request to quiet title to the disputed area was held on May 23, 2024.

In December 1990, the Kortmeyers purchased Lot 27, a parcel of property located in Seward County. Lot 26, the adjacent lot to the west, was owned by Richard Carroll from 1990 to 2018. Initially, Lots 26 and 27 were platted in the Glenhaven Subdivision Replat. Glenhaven Village, a mobile home park developed, owned, and managed by Carroll, occupied the Glenhaven Subdivision.

Alan testified that when he purchased Lot 27 in 1990, he believed that the disputed area was part of Lot 27 based on Carroll "physically coming out and pointing it out where he said the lot line was." The Kortmeyers did not have the property surveyed after it was purchased.

The Kortmeyers testified that they had held themselves out as the owners of the disputed area since 1990. The Kortmeyers maintained the disputed area by weeding, mowing the grass, and

trimming the trees. Carolyn testified that in the fall of 2003, the Kortmeyers planted a three-tiered flower garden in the disputed area. In the spring of 2004, a retaining wall and trees were added. A fence and a decorative arch were also installed. Alan confirmed that these improvements occurred around 2003 and 2004. Photographs of the improvements to the disputed area were received into evidence. Alan also testified that the Kortmeyers had a well and septic tank installed on their property, but it is unclear when these installations occurred and whether the well and septic tank were installed on Lot 27 or on the disputed area of Lot 26.

There was also evidence adduced about the Kortmeyers' history of using the entirety of Lot 26, which included the disputed area. At some point after the Kortmeyers purchased Lot 27 in 1990, someone moved a trailer onto Lot 26. The trailer was eventually owned by Betty Jackson, who lived as the Kortmeyers' neighbor. Carolyn testified that after Jackson "passed on," Jackson's son approached the Kortmeyers about buying the trailer, as it had been taken up by squatters. The Kortmeyers purchased Jackson's trailer, "evicted" the squatters, and thereafter used the trailer for storage. Alan thought that they purchased the trailer in 1998, but Carolyn testified that the purchase occurred between 2002 and 2006. Carolyn testified that Carroll "allowed us to take care of [Lot 26] because he was kind of in trouble for letting the squatters be there, so we took care of it."

Following the purchase of the trailer, the Kortmeyers began to make use of Lot 26. Alan testified that they had used the entirety of Lot 26 to park vehicles, campers, and flat-bed trailers. At the August 2023 hearing, Alan estimated that the Kortmeyers began making use of Lot 26 in 1995. At trial, the Kortmeyers acknowledged that they had not purchased Lot 26, only the trailer which sat on the lot.

Evidence at trial also established that the Kortmeyers had a rental history regarding Lot 26. A certified record from a Seward County Court case involving Glenhaven Village and the Kortmeyers was entered into evidence. At Glenhaven Village, there was no rent in the true sense of the word; rather, a fee was charged for services provided to Glenhaven Village residents including water, garbage, sewer, snow removal, street repairs, and landscaping. This utility fee, referred to as "rent" throughout the county court case, was the same for a person who owned a lot and for one who simply owned and occupied a trailer.

A 2011 order from the county court case noted that the Kortmeyers purchased the trailer on Lot 26 in October 2009. The county court also found that the Kortmeyers owned the real property and the trailer on Lot 27; the Kortmeyers "rent[ed] the real property" and owned the trailer located on Lot 26; Glenhaven Village provided services to both lots, which the Kortmeyers accepted but did not pay for; and the Kortmeyers owed a certain amount for the services provided to each lot. Further, the county court did not make a distinction between rent and services rendered but rather determined the reasonable value of the services rendered to both lots. The order was subsequently affirmed by the Seward County District Court.

In a memorandum opinion filed by this court on April 16, 2013, in case No. A-12-288, we affirmed the orders of the county court and district court. We found that while there was not an actual rental agreement between the Kortmeyers and Glenhaven Village, the Kortmeyers were "required to pay the fair rental value for the use and occupancy" of the trailer space on Lot 26, and failure to do so constituted a breach of an implied agreement to pay for utility services.

Alan acknowledged that he had been "paying rent on [Lot 26] dating back to at least 2010[.]" However, Alan testified that he did not "believe" that he was renting the disputed area

from Glenhaven Village, Carroll, or the Hendrixes as he thought that the disputed area was within the lot he owned.

In August 2018, Lot 26 was purchased along with the other remaining lots in the Glenhaven Subdivision by the Hendrixes. In a letter dated September 1, 2018, the Hendrixes informed the Kortmeyers of an increase in "lot rent" for the monthly utility fee. On October 15, 2019, the Hendrixes sent the Kortmeyers a "Notice of Eviction of the abandoned trailer" on Lot 26. Alan agreed that they paid rent on Lot 26 to the Hendrixes in 2018 and 2019. He testified that after he removed the trailer in 2019, he ceased paying "rent" on Lot 26. However, other evidence showed that the Kortmeyers continued paying rent on Lot 26 after the removal of the trailer on that property. Alan created a summary sheet "showing what we had paid for lot rent [on Lot 26]," which was received into evidence. The summary sheet is titled "Utility Payments to Alyssa Hendrix" and reflects payments from September 2018 to January 2021. Alan testified that the Kortmeyers last paid rent for Lot 26 in January 2021, after the surveys revealed the disputed area to be a part of Lot 26. Alyssa testified that the Kortmeyers paid rent for their use of Lot 26 until September 2021.

Following the Hendrixes' purchase of Lot 26 and other lots, they obtained permission to place a campground on the property. The Hendrixes ordered a survey to consolidate their multiple lots of property into one parcel. The survey completed in 2021 provided the accurate boundary line between Lots 26 and 27, which revealed that the disputed area was a part of Lot 26 and owned by the Hendrixes.

After they purchased Lot 26, and prior to the survey, the Hendrixes believed the disputed area belonged to the Kortmeyers. After the survey was completed, the Hendrixes notified the Kortmeyers in a letter dated February 1, 2021, that a fence, retaining wall, and evergreen trees extended onto the Hendrixes' property by 7 feet. The letter also included two separate offers to purchase the Kortmeyers' property, either including or excluding the Kortmeyers' home and improvements.

The Kortmeyers had their own survey completed in 2021, which likewise showed the disputed area was located on property owned by the Hendrixes. After receiving the February 2021 letter, the Kortmeyers continued to maintain and use the disputed area as their own. Alyssa agreed that the Kortmeyers are "still the individuals maintaining" the disputed area by "pick[ing] the weeds out of their landscape area." Alyssa testified that "it's not their property, but it's their landscaping and their flowers." She acknowledged that she had not maintained the disputed area because the Kortmeyers "like[d] to call the sheriff every time[.]" It is unclear from the testimony whether the Kortmeyers' exclusion of the Hendrixes from the disputed area occurred before or after the surveys.

*Trial Court's Order.*

On September 25, 2024, the district court entered an order finding that the Kortmeyers had failed to prove the necessary elements to support their claim of adverse possession. Specifically, the court found that there was credible evidence that the earliest date that adverse possession could have begun was the fall of 2003 when the landscaping of the disputed area extended beyond routine maintenance. Further, the Kortmeyers began to rent the disputed area by at least October 2009 and as tenants, could not claim adverse possession.

The district court entered an amended order the following day, clarifying that the Kortmeyers' requests to quiet title and for declaratory judgment were denied. Their request for a permanent injunction was also denied. The Hendrixes' counterclaim to quiet title in the disputed area was granted.

The Kortmeyers appeal.

## ASSIGNMENT OF ERROR

The Kortmeyers assign that the district court erred in finding that they failed to meet their burden to support a claim of adverse possession.

## STANDARD OF REVIEW

A quiet title action sounds in equity. *Spady v. Pughes*, 33 Neb. App. 373, 17 N.W.3d 188 (2025), review denied (Apr. 21, 2025). On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination. *Id*.

In an appeal of an equity action, where credible evidence is in conflict on a material question of fact, an appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and their manner of testifying, and accepted one version of the facts rather than another. *Id*.

## ANALYSIS

A party claiming title through adverse possession must prove by a preponderance of the evidence that the adverse possessor has been in (1) actual, (2) continuous, (3) exclusive, (4) notorious, and (5) adverse possession under a claim of ownership for a statutory period of ten (10) consecutive years. *Id*.

To be effective against the true owner, acts of dominion over land allegedly adversely possessed must be so open, notorious, and hostile as to put an ordinarily prudent person on notice of the fact that the lands are in the adverse possession of another. *Id*. If an occupier's physical actions on the land constitute visible and conspicuous evidence of possession and use of the land, such will generally be sufficient to establish that possession was notorious. *Id*.

Where both parties have used the property in dispute, there can be no exclusive possession by one party. *Id*. But the law also does not require that adverse possession be evidenced by complete enclosure and 24-hour use of the property. *Id*. It is sufficient if the land is used continuously for the purposes to which it may be adapted. *Id*. Evidence must show the intention of the claimant to appropriate and use the property as his or her own to the exclusion of all others. *Id*.

The Nebraska Supreme Court has previously held that acts of routine yard maintenance, without more, are insufficient to warn the titleholder that another is claiming or using the land for his own purpose. See *Siedlik v. Nissen*, 303 Neb. 784, 931 N.W.2d 439 (2019). Something more than a neighbor's watering and mowing over the property line is needed to alert a reasonable owner that his or her title is in danger and he or she must take steps to protect his interest. *Id*. Additionally, courts from other jurisdictions have held that mere maintenance of land, such as mowing the grass, cutting the weeds, planting flowers, and minor landscaping, does not constitute a hostile character

of possession sufficient to give notice of an exclusive adverse possession. *Id*. (citing *Shibley v. Hayes*, 214 Ark. 199, 215 S.W.2d 141 (1948); *Bailey v. Moten*, 289 Ga. 897, 717 S.E.2d 205 (2011); *Crown Credit Co., Ltd. v. Bushman*, 170 Ohio App. 3d 807, 869 N.E.2d 83 (2007); *Montieth v. Church*, 68 Ohio App. 2d 219, 428 N.E.2d 870 (1980)).

The Kortmeyers contend that they satisfied each element of adverse possession. The district court essentially focused its findings on the fifth element above, concluding that the Kortmeyers could not establish adverse possession for the requisite period of 10 consecutive years. In reaching this conclusion, the district court analyzed the Kortmeyers' maintenance and use of the disputed area, along with the rental history regarding Lot 26.

The district court found that the credible evidence presented was that the earliest date that adverse possession "could have begun was in the fall of 2003 when the retaining wall was built and trees planted." The testimonial evidence demonstrated that the Kortmeyers, the Hendrixes, and the Hendrixes' predecessor in interest, Carroll, all believed that the disputed area was included in Lot 27, owned by the Kortmeyers. The Kortmeyers assert that they have held themselves out as the owners of the disputed area and conducted routine maintenance of the grass and established trees since purchasing Lot 27 in 1990. With respect to the Kortmeyers' maintenance of the disputed area, however, the evidence does not suggest that their possession was hostile in nature, or something more than maintaining the aesthetics of the area.

We agree with the findings of the district court that only when the Kortmeyers began to install structures, such as the retaining wall and fence, as well as more involved landscaping, such as planting trees and a multi-tiered garden, did the Kortmeyers' physical actions on the disputed area constitute visible and conspicuous evidence of possession and use of the land sufficient to establish that possession was notorious. See *Spady v. Pughes, supra*. Thus, we agree that the Kortmeyers' adverse possession of the disputed area began in the fall of 2003, at the earliest.

The Kortmeyers also argue that they were in adverse possession of the disputed area for a statutory period of 10 consecutive years following their improvements to the disputed area discussed above. The district court found that the credible evidence, as previously noted by this court in the county court case, was that the Kortmeyers began to rent Lot 26 by at least October 2009. Accordingly, the district court found that they could not satisfy the statutory 10-year time period.

The Nebraska Supreme Court has held, "It is an ancient and well settled rule of law that a tenant cannot, while occupying the premises, deny his landlord's title." See *Bender v. James*, 212 Neb. 77, 321 N.W.2d 436 (1982) (quoting *Carson v. Broady*, 56 Neb. 648, 651, 77 N.W. 80, 81 (1898)). If possession of real estate is entered upon by one as a tenant under an agreement with the owner, the tenant cannot assert ownership by adverse possession until he first surrenders possession, or the tenant, by some unequivocal act, notifies the landlord that he no longer holds under the agreement. *Bender v. James, supra*. See, also, *Young v. Lacy*, 221 Neb. 511, 378 N.W.2d 192 (1985) (holding that tenant must repudiate title of landlord and give landlord notice of repudiation by hostile acts); *Jackson v. Eichenberger*, 189 Neb. 777, 205 N.W.2d 349 (1973). When the relation of landlord and tenant has been created, the possession of the tenant is consistent with the title of the landlord, and mere nondemand and nonpayment of rent are not sufficient to bar the landlord's title. *Id*.

The Kortmeyers contend that though they made rental payments regarding Lot 26 beginning in 2009, both the Kortmeyers and the Hendrixes did not believe the rental payments for Lot 26 included the disputed area, as both parties believed the land was owned by the Kortmeyers as part of Lot 27. Nevertheless, despite the parties' belief, upon completion of the surveys in 2021, both parties were informed that the disputed area was included in Lot 26, not Lot 27.

A tenant cannot, while occupying the premises, dispute his or her landlord's title. See *Bender v. James, supra*. Based upon this record, the Kortmeyers had a possessory right to use Lot 26, including the disputed area, beginning at least in 2009. This possessory right defeated any claim for adverse possession at that time. Thus, the Kortmeyers only adversely possessed the disputed area from 2003, when the improvements to the landscaping began, to 2009, when they began to rent Lot 26, which was inclusive of the disputed area. Because the Kortmeyers were not in adverse possession of the disputed area for a statutory period of 10 consecutive years, they have failed to prove by a preponderance of the evidence the necessary elements to support a claim of adverse possession of the disputed area. The district court did not err in so finding.

## CONCLUSION

Upon our de novo review, we find that the district court did not err in denying the Kortmeyers' quiet title claim to the disputed area. We therefore affirm the judgment of the district court.

AFFIRMED.